### JOHN A. MEYERS v. THE UNITED STATES.

1. PERJURY—*Materiality.* The materiality of any sworn statement must be determined from the nature of the proceedings sought to be affected by such statement.

2. WHEN FALSE SWEARING CONSTITUTES PERJURY. If a sworn statement in a land contest affidavit is sufficient, to either order a contest, or if it influences the action of the department of the interior in withholding a patent or in deferring action upon the patent, then perjury may be properly assigned upon such statement.

3. PERJURY. Perjury may be assigned upon an affidavit, made to be used in a judicial proceeding, where the statements contained in such affidavit may influence the tribunal or officer before whom the matter is pending, or where it may work an injury to the party against whom it is directed, or where it is pertinent to the issue being considered, or where the statements tend to support and give credit to the witness, or where the matter sworn to is such that an officer or tribunal to which it is presented has the right to consider it in determining the issue presented.

4. INTERIOR DEPARTMENT—*Jurisdiction of.* The interior department has jurisdiction over all matters relating to the disposition of the public domain and may prescribe rules and regulations to govern in all proceedings instituted to obtain title to such domain. And the rules and regulations promulgated by the interior department inhere in such department by reason of the fact that congress has vested in that department the jurisdiction to dispose of the public domain under and in accordance with the laws of congress.

5. CONTEST AFFIDAVIT—*Allegations of.* All of the allegations of a contest affidavit which tend to support the allegations upon which the perjury is assigned. must be considered together, and if upon all of such allegations, a showing is made upon which an affirmative action may have been taken by the land department, then perjury will lie.

6. PERJURY—*Proper Assignment of.* If the statements in an affidavit are such as to call for judicial action, and are of sufficient importance to require action and are pertinent to the issue under consideration, perjury will lie.

7. TESTIMONY—*Competency of Self-Serving Declarations.* The court below did not err in refusing to permit the defendant to prove by witnesses his own statements relative to his purposes in dwelling upon a tract of land, when the only purpose of such self-serving declarations was to contradict the testimony of witnesses who had testified for the prosecution to the effect that the defendant had stated to them that he was upon the land as an employe of another party.

*Appeal from the District Court of Oklahoma County.*

The appellant was convicted of the crime of perjury in Oklahoma county and sentenced to serve a term of five years in the United States penitentiary. He assigns error in the proceedings had upon the trial of the case in the court below and brings the case here for reversal. The opinion states the facts.

*J. L. Brown,* for appellant.

*C. R. Brooks, United States Attorney, Thomas F. Mc-Mechan and Roy Hoffman, Ass't United States Attorneys,* for appellee.

The opinion of the court was delivered by

DALE, C. J.: October 31, 1894, the appellant, John A. Meyers, was indicted by a grand jury of the district court of Oklahoma county, charged with the crime of perjury. The indictment charges such crime to have been committed by falsely swearing to a contest affidavit in the United States land office at Oklahoma City on the sixth day of December, 1893. The perjury is assigned upon allegations contained in the contest affidavit to the effect that he, Meyers, was the first and only legal settler upon a certain tract of land near Oklahoma City, and that he entered upon the same on the tenth day of May,

1889, and at that time established his residence thereon, since which time he has claimed it as his residence and homestead, and has continued to reside thereon. The cause was duly tried and Meyers convicted and sentenced to the penitentiary for a period of five years.

To reverse the judgment of the lower court the case is brought here, and in his brief counsel for appellant assigns but two propositions as grounds for reversal of the judgment of the lower court, which are as follows:

1.  That the matters charged in the indictment are not material matter upon which a conviction for perjury may be based.

2.  The refusal upon the part of the lower court to permit Meyers to show by witnesses certain declarations which he, Meyers, had made while upon the land touching his purpose in residing thereon.

In order to properly discuss the assignments of error set forth in brief of counsel for appellant, it is necessary to revert to the history of the case as we gather it from the record. The tract of land described in the contest affidavit of Meyers is the northwest quarter of section 34, in township 12, north of range 3 west, adjoining Oklahoma City. It was first entered as a homestead by William J. McClure April 30, 1889, and on February 28, 1891, by him relinquised back to the government, and at the same time such reliquishment was filed, the land was re-entered by one George W. Massey. August 6, 1892, Massey made final proof for the land. It appears from the record that at the time Meyers filed his contest affidavit, patent had not yet issued to Massey for the land, and that there was some kind of a contest proceeding pending in the interior department against his entry by one Graham.

The contest affidavit of Meyers—the one upon which perjury is assigned, contains several declarations and allegations other than that upon which he was prosecuted for the crime of perjury, and a correct determination of the questions involved make it necessary to set such affidavit out in its entirety.    Omitting caption and preliminary matters of the contest affidavit, it is as follows:

"Personally appeared before me, John A. Meyers, of Oklahoma City, O. T., and on his oath says that he is well acquainted with the tract of land embraced in the homestead entry of George W. Massey, number 424, made at Oklahoma City land office on the 28th day of November, 1891, upon the northwest quarter of section 34, township 12, north of range 3, west.

"That the said George W. Massey entered upon and occupied a portion of the land described in and opened to settlement by act of congress of March 2, 1889, and the proclamation of the president of March 23, 1889, subsequent to March 2, 1889, and prior to noon of April 22, 1889, and contrary to said act of congress and the proclamation of the president of the United States of March 23. 1889.

"That he, the said Massey, on the———day of———, 1890, falsely, fraudulently and unlawfully submitted and offered his final proof upon the above said tract of land under and in pursuance of said fraudulent homestead entry, and did then and there, his certain two corroborating witnesses then and there being, submit his final proof of said tract of land, and did then and there pay the commutation price for said land, and on the same day that he submitted the said final proof as aforesaid, he sold and transferred said land by deed to other parties.

"That said entry and final proof was made for speculative purposes and not in good faith to procure a homestead, he, the said Massey, well knowing then and there that the said entry and final proof and other acts of his

in procuring and perfecting his homestead title thereto was for specluative purposes and fraudulent and not made in good faith under the homestead laws of the United States.

"The contestant further represents it to be a fact and alleges that he is the first and only legal settler on the said tract of land; that he entered upon the same on the 10th day of May, 1889, and then and there established his residence thereon, since which time he has claimed it as his residence and homestead and continued to reside thereon. That he offered his homestead filing papers for the said tract of land at the United States land office at Oklahoma City, O. T., showing his qualifications and prior settlement and right to enter said land, which were rejected, and from which rejection he appealed to the honorable commissioner of the general land office, which appeal and proceedings had therein are cited and referred to. That his right to enter the above-said tract of land has never been finally passed upon by the department of the interior or any of its officers, as he is informed and verily believes, and that his appeal papers and contest papers have been lost or destroyed or unlawfully taken from the files, and your affiant especially reserves all right that he may have initiated by said appeal and application to file and waives none of his rights acquired thereunder by the filing of this contest."

The contest affidavit concludes with other matters which are immaterial, so far as the purposes of this case are concerned.

The evidence adduced on the trial shows conclusively that Meyers in his contest affidavit swore falsely in relation to his settlement and residence upon the land, and counsel in his brief does not claim or argue that there was any truth in such statements so made in such contest affidavit, or that they were or might have been true, or that Meyers, at the time he made the same, might have believed them to be true, but argues that perjury could

12  —v.

not be assigned upon said allegations because they could in no event have been material as the basis of a contest, and if true would give to Meyers no right to have the entry of Massey cancelled.

The materiality of any sworn statement must be determined from the nature of the proceedings sought to be affected by such statement. Whether or not a certain statement in a contest affidavit is a material allegation depends upon the effect such statement will have either in the trial of the cause, or in any of the preliminary steps leading up to the trial. At the time the contest was filed Massey had made his final proof, and was, under the law, a claimant for a patent from the interior department. What effect under the rules of the interior department did the filing of a contest affidavit have upon such department in causing them to withhold or defer the issuing of the patent? If the allegations of settlement and residence upon which the perjury is assigned, supported by the allegations "that he offered his homestead filing papers for the said tract of land at the United States land office at Oklahoma City, showing his qualifications and prior settlement and rights to enter said land," etc., and the further allegation of an appeal and loss of application, if these allegations in support of the allegation of settlement and residence are sufficient to cause the interior department to either consider the matter for the purpose of determining whether or not a contest should be ordered, or if it had the effect to influence the action of that department in withholding the patent or to defer action upon the patent, then, under the law as we find it, perjury might be assigned and a conviction sustained.

"In addition to the primary and direct materiality whatever evidence tends to influence the result on the direct or any collateral issue is material within our

present doctrine, but what is not thus adapted to affect any result is not thus material." (2 Bishop Crim. Law, § 1032).

"And it appears to have been holden not to be necessary that it should be shown to what degree the point in which a man was perjured is material to the issue, and that it will be sufficient if the point were circumstantially material. And still less is it necessary that the evidence be sufficient for the plaintiff to recover upon, since evidence may be very material and yet not full enough to prove directly the point in question." (Russel on Crimes, vol. 3, 9th Ed. 11).

"The false swearing to matter which, however worthless and ineffective ultimately, has yet some *prima facie*, though illusory, weight, is perjury, for by this injury and annoyance to another may be at least transiently wrought.     *     *     In other words a fabrication aimed into blank air where there is no possibility of injury is not indictable; but such fabrication is indictable when there is a possibility of injury, no matter how remote, contingent or ephemeral." (Wharton Crim. Law, 9th Ed. vol. 2, § 1283.)

In *Commonwealth v. Parker*, 2 Cush. 212, in speaking to the question of the materiality of testimony upon an assignment of perjury, the court uses the following language:

"It must appear that the matter sworn to was material. But the materiality of the evidence must depend upon the nature of the question in issue. If the facts stated in the testimony were really foreign from the purpose and had no bearing upon the point in issue in the case on trial such statement cannot authorize a conviction for perjury. But if it has a direct bearing so far as it corroborate the evidence concerning the material matter, it is that species of testimony which may involve the party in the crime of perjury: for its falsity is equally prejudicial to the party affected by it and equally criminal as if the matter stated had distinctly applied to the very point in issue."

From the foregoing it would appear that testimony may be material which is merely prejudicial to the party affected by it.

It is also a well settled proposition of law in perjury cases that evidence which is legally inadmissible, yet if the same be accepted and it thereby becomes material, perjury may be assigned upon it. Thus in a note to § 1280, Wharton Crim. Law, 9th Ed. vol 2, it is stated:

"P was indicted for having falsely sworn that in September, 1860, he had carnal knowledge of A.  A had obtained an affiliation summons against H, and in her cross-examination denied having had connection with P in September, 1860, (a time which could not have made him the father of the child).  P was called as a witness on behalf of H, and swore that he had connection with A in the month named.  It was determined that, although his evidence was legally inadmissible, yet being admitted, it became material and perjury might be assigned upon it."

"Testimony tending to affect the verdict of the jury or increasing the damage and thus influencing the judgment of the court is material and it is not necessary that the testimony should of itself be sufficient to sustain the issue, or that it should change the mode of punishment, if it is pertinent to the issue it is sufficient." (*Davidson v. State*, 22 Tex. App. 381).

"It ·was strongly urged by the counsel that the evidence was not sufficient to justify the issuing of a warrant; but that is no test.  Had he the right to take it into consideration?  If so, there is an end of the question.  It is of no consequence that it was not of itself a sufficient justification because the guilt of the plaintiff depended upon the conclusiveness of the evidence.  The authorities are clear that it is not important whether the false oath is credited or not or whether the party against whom it is given is prejudiced thereby, for the prosecution is not grounded on the damage to the party but on

the basis of public justice." (1 Hawk. P. C. C. 29, 59; 5 Bac. Abr. Perjury [A]. 2 Russ. on Crimes, 1759).

"Therefore, it is no answer to say that the facts sworn to by the plaintiff were not sufficient to justify the issuing of the warrant by the justice, if there were any facts sworn to which were material and pertinent to the inquiry, having a tendency to implicate the person charged, and which the justice had a right to take into consideration, that is sufficient to establish the guilt of the plaintiff." (*Hoch v. The People*, 3 Mich. 552).

"If a person swears falsely in respect to any fact relative to the issue being tried, then we think he is guilty of perjury, although the case failed from defect of proof of another fact, and although the other fact alleged had no existence.    *    *    It is not necessary that the false statements should tend directly to prove the issue in order to sustain an indictment. If the matter sworn to is circumstantially material or tends to support and' give credit to the witness in respect to the main fact, it is perjury." (*Wood v. People*, 59 N. Y. 125; *Commonwealth v. Pollard*, 12 Mass. 220; *State v. Day*, 100 Missouri, 242).

"Evidence in judicial proceedings, though touching matters incident or collateral, may be instruments of perjury. Upon the trial of a party on an information for perjury alleged to have been committed in swearing to an affidavit, it is proper to show that the affidavit was made to be used, or that it was actually used in a judicial proceeding." (*State v. Bunker*, 38 Kan. 737).

"The determination of the land contest adversely to the party instituting it and a holding by the interior department to the effect that the statements contained in the contest affidavit are insufficient upon which to base a contest, do not preclude a prosecution for perjury." (*Finch v. United States*, 1 Okla. 396).

From the foregoing it will be seen that perjury may be assigned upon an affidavit made to be used in a judicial proceeding where the statements contained in such

affidavit may influence the tribunal or officer before whom the matter is pending, or where it may work an injury to the party against whom it is directed, or where it is pertinent to the issue being considered, or where the statements tend to support and give credit to the witnesses, or where the matter sworn to is such that the officer or tribunal to which it is presented has the right to consider it in determining the issue presented. And because the matter may not be believed or be inadmissible as evidence, or because action is refused by reason of the statements being in law insufficient to justify action and the party against whom the affidavit be directed be not injured, still perjury will lie and the courts almost without exception so hold.

Holding to this view of the law, we will now examine the indictment and determine whether or not the statements upon which perjury are assigned bring it within the rule above announced. Under the law the interior department has jurisdiction of all matters relating to entries both preliminary and final for lands which may be entered under the homestead law, and such jurisdiction obtains until patent issues and the government parts with all title to the land. That department alone has power, under the laws of congress, to try and determine all contests initiated between adverse claimants to lands, and may prescribe necessary rules and regulations to govern in all such proceedings. (*Lee v. Johnson*, 116 U. S. 48; *Knight v. Land Ass'n*, 142 U. S. 178).

And in *Lee v. Johnson, supra,* it is said that "the secretary of the interior is bound to exercise that just supervision which the law vests in him over all proceedings instituted to acquire portions of the public lands." And this right of supervision inheres in the absence of

express statutory authority by reason of the fact that congress has invested in the interior department the jurisdiction to dispose of the public domain to homestead settlers under certain laws of congress.    Indeed, there is no express statutory authority for many causes named in the contests initiated.    Congress has provided in the homestead law for contests for abandonment only; but congress has not attempted to define, generally, except in the one respect above noted, what acts upon the part of the entryman shall constitute grounds of contest.    And there has grown up in the land practice, under the rules and regulations of the interior department, a well defined practice and code of procedure applicable to entries under the homestead law.    Under such code we find that extra-statutory contests are recognized, and that contests may now be commenced upon any ground which, in the judgment of the secretary of the interior, may be of sufficient importance to justify a refusal to permit a person to enter the land under the homestead law.    Whether or not a hearing shall be allowed upon any contest instituted against a preliminary homestead entry may be determined by the register and receiver; after final proof is made, and before patent issues for the land, all contests for the purpose of cancelling such entry must be submitted to the commissioner of the general land office, and the discretion is left to such officer to determine whether or not the contest may proceed, and can only be controlled by *certiorari* to the secretary of the interior. (*Swarts v. Brown*, 6 L. D. 174; *A. C. Logan*, 8 L. D. 2; *Manderville v. McKinsey*, 2 L. D. 580; *R. R. v. Miller*, 3 L. D. 324).

And it is also held that none of the rules promulgated by the interior department shall at all times be binding

upon such department but the supervisory power which exists in the secretary of the interior may be exercised of his own motion. (*Knight v. Land Ass'n, supra*).

And that it is properly exercised to prevent substantial injustice. (*Dixon v. Schlater*, 2 L. D. 597; *Oscar T. Roberts*, 8 L. D 423).

It even held that it extends to a waiver of all irregularities in the proceedings and consideration of a case on its merits. (*C. W. Filkins*, 5 L. D. 49).

And the right to order a hearing on a contest affidavit filed out of time is also exercised. (*Alice Placer*, 4 L. D. 314; *Spring v. Sweeney*, 10 L. D. 157; *Devereux v. Hunter*, 11 L. D. 214; *Tam v. Story*, 16 L. D. 282).

To overlook delay or irregularity in filing a motion for review. (*R. R. v. Bass*, 14 L. D. 443).

And the department may also reopen any case which has been closed for failure to appear. (*Pike's Peak Lode*, 14 L. D. 47).

And in addition to all of the foregoing powers, which under the rules and regulations and adjudicated cases are continuously exercised by the interior department, said tribunal also claims and uses the right to waive all rules of practice which it has promulgated in the interest of substantial justice. (*Ayers v. Buell*, 2 L. D. 257; *Pierce v. McDonald*, 11 L. D. 183; *Bennett v. Cravens*, 12 L. D. 647).

And on May 4, 1894, the department promulgated rule 114 which, among other matters, recited, in substance, that it had the power to act in any case which would induct a court of equity to act in granting relief against a judgment of a court of law, and under such circumstances a cause theretofore determined would be opened for further consideration.

These different powers all inhere in the land department by reason of the laws of congress providing that the public domain should be disposed of through such department, and the right to exercise such powers is upheld by the court. (*Lee v. Johnson*, and *Knight v. Land Ass'n*, *supra*; *Uturbide v. U. S.* 22 How. 290; *Poullney v. LaFayette*, 12 Pet. 472).

Applying the rules, regulations, and the decisions upon the adjudicated cases to those allegations of the contest affidavit under consideration, it will be seen that, if in fact, as stated in the contest affidavit, Meyers had in good faith offered his homestead application at the Oklahoma City land office, showing his qualifications and prior settlement and right to enter the land, and after rejection thereof an appeal was duly taken by him to the commissioner of the general land office, he would thereby have gained a right to contest, under the rules of the land department, providing his homestead application was filed within ninety days next succeeding the preliminary entry made by Massey. The date upon which he filed his application is not set up in the affidavit. In the affidavit he alleges "that his appeal papers and contest papers have been lost or destroyed or unlawfully taken from the files." The allegations in the contest affidavit wherein he asserts that he did make a homestead application showing his qualifications and prior settlement and his right to enter the land, that the same was rejected and that an appeal was taken from such rejection, together with the further statement that his right to enter the land had never been finally passed upon by the department, as well as the statement relating to loss or destruction of the papers, must all be construed with the allegations assigned as perjury, and if

upon all of the allegations a showing was made upon which affirmative action may have been taken or may have been considered by the land department, then unquestionably perjury lies. An examination of the contest affidavit will show that had Meyers inserted a date fixing his settlement at a time within ninety days next after Massey's entry, his contest affidavit would have entitled him to hearing, providing the same had been duly corroborated, and there can be no doubt that the commissioner had the power under the decisions above quoted to provide for a hearing upon an amendment being filed which would fix the date upon which the application to enter had been made. Under the powers of the interior department it was discretionary to refuse or defer the delivery of a patent to Massey. And the showing by Meyers that he was an actual settler upon the land at the date of Massey's preliminary entry; that he had at all times since such date continued his settlement and residence; that he had filed his application to enter the land, and appealed from the rejection thereof, and that his rights had never been finally determined, if true, the discretionary powers of the secretary of the interior might well be invoked in his favor. And unquestionably such a showing would ordinarily work a delay in the issuance of the patent, to the prejudice of Massey. The very fact that a contest of that character was pending would, under the rules of the department, work such delay. But in the absence of such an order by the commissioner, whether he would or would not order a hearing, it is carrying the doctrine of harmless false swearing a long ways to hold that a party may go before any tribunal, where such tribunal has jurisdiction of the parties and subject matter, and is authorized to administer an oath, and there with impunity swear to a

statement of facts which call for judicial action either favorably or unfavorably to the contention raised, and then evade punishment for false swearing on the plea that the statements so sworn to were not material, and that the tribunal had not the power to act upon such statements. If the statements call for judicial action at all, why are they not material? The false statement was one which the land department had the right to consider, and we think the doctrine announced in *Hoch v. The People, supra,* is applicable to this case. The statements assigned as perjury being of such a character as to require action by the land department, we are of the opinion that a conviction thereon for perjury will properly lie.

The remaining question urged in the brief of counsel for appellant is easily disposed of. At the trial the defense sought to show by a witness that at the time Meyers was residing upon the land in question he stated to said witness what his purpose was in dwelling thereon. This evidence was offered to offset the testimony of witnesses for the prosecution, who had stated that Meyers told them that he was upon the land working for one Kountz, and was by the court rejected and defendant not allowed to introduce same. In this ruling the trial court did not err. It would have been competent for the defense to have offered proof of any denial of the statements claimed to have been made by defendant, but self-serving declarations cannot be offered as a defense against admissions prejudicial to a defendant. It is true, generally speaking, that statements by one in possession of land as to the character and purpose of his holdings may be offered in evidence in support of his claim of title in the land, but we do not regard this as that

character of a case.   If the question at issue in the trial of
the cause below  was one involving the title to land,
then perhaps declarations of a party in possession might
be competent for the purpose of showing that he was
openly and avowedly claiming possession of the tract of
land, and as against the claim of another that he was
there merely as a tenant, but the declarations of the
party having been established by the prosecution, it
would serve no good purpose to permit the defendant to
show that he had made contradictory statements relative
to the same matter as a defense to the declarations made
against his own interest.

We are therefore of the opinion that the court below
committed no error in rejecting such testimony.

From the above we conclude that the judgment of
.the court below should be affirmed, and it is so ordered.

All the Justices concurring.