## WALTER DEEN v. STATE.

No. A-873.   Opinion Filed April 16, 1912.

(122 Pac. 941.)

1. **INDICTMENT AND INFORMATION**—Sufficiency. An information is sufficient which states the facts clearly and distinctly, in ordinary and concise language, without repetition, and which, construed under the ordinary rules of construction of the English language, would enable a person of common understanding to know what was meant, and to apprise the defendant of the exact nature of the offense with which he was charged, although the same does not contain all the phraseology and technical language ordinarily used in criminal pleading.

2. **SAME**—Definiteness. The modern rule of criminal pleading does not require the use of ancient forms, crude phraseology, prolix and abstruse expressions to accompany the averments in an information, if the charge is set forth in plain, common-sense English language. No greater particularity is required than is necessary to express the same fact in everyday parlance.

(Syllabus by the Court.)

*Appeal from District Court, Jefferson County; Frank M. Bailey, Judge.*

Walter Deen was convicted of felonious assault, and appeals. Affirmed.

*Gilbert & Bond,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen. (*Andrew Wood,* of counsel), for the State.

DOYLE, J. On June 25, 1909, an information was filed in the district court of Jefferson county, charging the defendant with the crime of assault with intent to kill. On February 17, 1910, an amended information was filed. The charging part reads as follows:

"The said Walter Deen, then and there being, did then and there, unlawfully, willfully, feloniously and of his malice afore-thought, and with a premeditated design then and there existing in the mind of him, the said Walter Deen, then and there to effect the death of one W. M. Isaac, and without authority of law, with a certain gun which gun then and there being a deadly weapon, did then and there make an assault upon the person and body of the said W. M. Isaac, and the said Walter Deen then and there in the manner and form as aforesaid and with the intent as afore-said did shoot off and discharge at and towards the said W. M. Isaac the aforesaid gun with the intent of him, the said Walter Deen, then and there feloniously and of his malice aforethought, and with a premeditated design then existing in the mind of him, the said Walter Deen, then and there to effect the death of him, the said W. M. Isaac, and without authority of law to kill and murder him, the said W. M. Isaac, contrary to," etc.

Upon arraignment the defendant filed a general demurrer to the information, which was overruled and exceptions allowed. Upon his trial he was found guilty. March 3, 1910, judgment and sentence was entered in accordance with the verdict, fixing the defendant's punishment at two years' imprisonment in the state penitentiary. From the judgment he appeals.

The first objection presented by counsel for the defendant is that the information does not state facts sufficient to consti-tute a public offense. As it was said by the Supreme Court of Oklahoma Territory in the case of *McHugh v. Territory,* 17 Okla. 1, 86 Pac. 433:

"The only answer that is necessary to make to this conten-tion is to refer to the decision of this court in the case of *Heatley v. Territory,* reported in 15 Okla. 72, 78 Pac. 79. The language used by Chief Justice Burford in rendering that opinion, in our opinion clearly, concisely, and unequivocally states the law. The language of that opinion is as follows: 'The first objection pre-sented by counsel for plaintiff in error is that the indictment does not charge a public offense. There is some repetition and sur-

plusage in the indictment, but under section 2206, Wilson's Rev. & Ann. Stat. 1903, the material averments necessary to charge a public offense are that "that in the county of Greer, and Territory. of Oklahoma, on the second day of September, 1903, one Jeff B. Heatley did then and there intentionally, wrongfully, and feloniously shoot one R. Bell with a certain firearm, to wit, a shotgun, with the intent then and there and thereby to kill him, the said Bell." The indictment contains all this and more. To hold that it was necessary that the indictment should aver that the shotgun was loaded with gunpowder and leaden bullets, and was had and held in the right hand of him, the said Heatley, and that it was shot off and discharged at and against the body of him, the said Bell, and such other ancient and unnecessary phrases as are usually found in forms presented by Chitty and other law writers of the remote past, would be to do violence to those provisions of our Criminal Code which prescribe the requisites of criminal pleading. By second 5357, Wilson's Rev. & Ann. St. 1903, it is provided that the indictment must contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." And by section 5365, subd. 6, it is enacted, among other requirements, that the indictment is sufficient if it can be understood therefrom "that the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language without repetition. and in such manner as to enable a person of common understanding to know what is intended." * * * It is a common and ordinary mode of expressing the fact to say that one person "shot another," and when it is said that a man was "shot," or that one person "did shoot" another, every person of common understanding knows what is intended without explanation; and, in order to set forth such fact in ordinary and concise language, it is no longer necessary to express in words each component or constituent embraced in the act. The term "did shoot" embraces the weapon, the load, the discharge, and the act of discharging, and it is so meant and understood by courts, counsel, jurors, and witnesses; and why should more particularity or repetition be required in a pleading than is required to express the same fact in everyday parlance? The law does not require it, and the necessity for following ancient and obsolete forms made up of repetitions, unnecessary particularization, and crude phraseology, if it ever existed, no longer prevails. *Stutsman v. Territory,* 7 Okla. 490, 54 Pac. 707; *People v. Steventon,* 9 Cal. 274; *People v.*

*Choister,* 10 Cal. 311. The tendency of prosecuting attorneys to abandon prolix, abstruse, and superfluous terms and phrases in criminal pleading is rather to be commended than condemned. When the character of the firearm is designated, the manner of using it, the intent with which the act is done, and the person against whom the act is directed, are averred in plain, common-sense English language, the act charged as the offense is sufficiently pleaded, and the law requires no more.'"

The proof on the part of the state tended to show that the defendant sent word by his little boy to Isaac to come over to his house and get some cattle that he had herd-lawed; that the prosecuting witness was caring for cattle that belonged to J. W. White; that he rode over to the defendant's house; the defendant was standing in his horse lot. Isaac said, "Where is them cattle?" And the defendant answered, "Isaac, I thought I sent for you to come up here and fix that fence." Isaac said, "I have fixed it." Defendant said, "You are a God damned lying son of a bitch. Fall off that horse. I am going to kill you." Isaac said, "I guess not." Defendant said, "Fall off of that horse. I am going to kill you." And Isaac said, "I do not have to fall off the horse"; and the defendant said, "You God damned son of a bitch, you beat me up one time, and I am going to kill you." After making this threat several times, the defendant with a Winchester shot at Isaac, who had jumped off the horse on the other side from the defendant. The second shot struck the horse, going through his body, but missing Isaac. There was a seven-wire fence between them. As Isaac ran away, the defendant fired another shot at him. Isaac at the time was in J. W. White's pasture. The second shot killed the horse. Isaac was unarmed. Henry Salmon testified that while he was a half a mile away he witnessed the shooting, and saw the defendant follow Isaac and shoot at him. The motion to direct a verdict was very properly overruled. The defendant testified on his own behalf, and his testimony alone is sufficient to sustain the verdict and judgment.

The instructions of the court were fair, and no good purpose would be served by reviewing the objections to them, further

than to state that we find no error in any of the matters complained of in the assignments pertaining them.

From our examination of the record in this case, we are clearly of opinion that the defendant had an impartial trial. The judgment of the district court of Jefferson county is therefore affirmed.

FURMAN, P. J., and ARMSTRONG. J., concur.