# CHARLEY ARNOLD v. STATE.*
No. A.-1311.   Opinion Filed June 21, 1913.
Rehearing Denied Jan. 26, 1929.
(132 Pac. 1123.)

---

*This case overruled by Washburn v. State, 47 Okla. Cr. 321, and Roley v. State, 48 Okla. Cr. 60.

E. L. Mitchell, for appellant.

Smith C. Matson, Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. Appellant demurred to the information, setting up 17 different reasons why the information did not state facts sufficient to constitute an offense. The court overruled the demurrer, to which appellant excepted.

Counsel for appellant has displayed great ingenuity and learning in support of his objections to the information, and if the common-law doctrine of a strict construction of indictments and informations prevailed in this state, some of the objections urged by appellant would be good. But these objections are disposed of by the statutes of Oklahoma and the previous decisions of this court.

Section 5753, Rev. Laws 1910, is as follows:

"In an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment or information need not set forth the pleadings, record, or proceedings with which the oath is connected nor the commission or authority of the court or person before whom the perjury was committed."

For previous Oklahoma decisions as to the sufficiency of an indictment or information for perjury, see Stanley v. United States, 1 Okla. 336, 33 Pac. 1025; Finch v. United States, 1 Okla. 396, 33 Pac. 638; Rich v. United States, 2 Okla. 146, 37 Pac. 1083; Peters v. United States, 2 Okla. 116, 33 Pac. 1031; Gray v. State, 4 Okla. Cr. 292, 111 Pac. 825; 32 L. R. A. (N. S.) 142; Schlumbolm v. State, 5 Okla. Cr. 36, 113 Pac. 235; Meyers v. United States, 5 Okla. 173, 48 Pac. 186; Coleman v. State, 6 Okla. Cr. 252, 118 Pac. 594; Rose v. State, 8 Okla. Cr. 294, 127 Pac. 873.

We do not see how a person of common understanding could be mistaken as to what was intended by the information in this case, or how appellant could have been misled thereby to his injury.

In the case of Deen v. State, 7 Okla. Cr. 150, 122 Pac. 941, in speaking of the sufficiency of an indictment or information, Judge Doyle said:

"An information is sufficient which states the facts clearly and distinctly, in ordinary and concise language, without repetition, and which, construed under the ordinary rules of construction of the English language, would enable a person of common understanding to know what

was meant, and to apprise the defendant of the exact nature of the offense with which he was charged, although the same does not contain all the phraseology and technical language ordinarily used in criminal pleading. The modern rule of criminal pleading does not require the use of ancient forms crude phraseology, prolix and abstruse expressions to accompany the averments in an information, if the charge is set forth in plain, common-sense English language. No greater particularity is required than is necessary to express the same fact in everyday parlance."

It is argued by counsel for appellant that the information does not state a public offense because the statutes of this state do not authorize the filing of affidavits in support of motions for new trials in criminal cases, except as to newly discovered evidence, and for that reason the crime of perjury could not be based upon an affidavit of this kind because unauthorized. This contention, to our minds, is wholly without merit. It has always been the custom of trial courts to permit the use of affidavits in support of motions for a new trial as to new matter or matters that did not occur upon the trial proper. Misconduct of the jury, such as is set up in this affidavit, if true, would have entitled the appellant as a matter of right to a new trial in this case. Matters of this kind can only be proven by affidavits, or by the court ordering the witness to be brought into court and examined under oath touching the matters set forth in the motion. That affidavits are proper to be used in proceedings of this kind is clearly fixed by section 5071, Rev. Laws 1910 (section 5864, Comp. Laws 1909), which reads as follows:

"An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process in an action, to obtain a provisional remedy, an examination of

a witness, a stay of proceedings, or upon a motion, or in any other case permitted by law."

This section is taken from the Code of Civil Procedure, but section 5882, Rev. Laws 1910, provides that the rules of evidence in civil cases are also applicable to criminal cases where the Code of Criminal Procedure does not otherwise provide, and in this instance no other provision is made. The statute above quoted is a conclusive answer to the objection that the law does not authorize the filing of affidavits in support of motions for a new trial.

In the case of Meyers v. United States, 5 Okla. 173, 48 Pac. 186, the Supreme Court of Oklahoma Territory said:

"From the foregoing it will be seen that perjury may be assigned upon an affidavit made to be used in a judicial proceeding where the statement contained in such affidavit may influence the tribunal or officer before whom the matter is pending, or where it may work an injury to the party against whom it is directed, or where it is pertinent to the issue being considered, or where the statements tend to support and give credit to the witnesses, or where the matter sworn to is such that the officer or tribunal to which it is presented has the right to consider it in determining the issue presented. And because the matter may not be believed or be inadmissible as evidence, or because action is refused by reason of the statements being in law insufficient to justify action and the party against whom the affidavit be directed be not injured, still perjury will lie and the courts almost without exception so hold."

We therefore hold that the trial court did not err in overruling the demurrer to the information in this case.

Second. Section 2219, Rev. Laws 1910, is as follows:

"Perjury is punishable by imprisonment in the penitentiary as follows: (1) When committed on the trial

of an indictment for felony, by imprisonment not less than ten years nor more than 20 years. (2) When committed on any other trial or proceeding in a court of justice, by imprisonment for not less than five nor more than ten years. (3) In all other cases by imprisonment not more than five years."

The court submitted only the punishment authorized by the first subdivision of this section. It is contended by counsel for appellant that this was error. This is the first time that this precise question has ever been before us for decision. It is therefore necessary that we should carefully analyze and consider the entire section in connection with all of its several parts.

There are no degrees of perjury in Oklahoma, but the punishment is divided into three classifications: First. When committed on the trial of an indictment for a felony, by imprisonment not less than 10 years nor more than 20 years. This provision of the statute is free from ambiguity and is not susceptible of two constructions. To subject a person to punishment under this provision the perjury must have been committed on the trial of an indictment for felony. This is the plain letter of the law and by it we are bound. It was a clear oversight on the part of the committee revising the Code and of the Legislature in not providing that punishment in such cases should be inflicted for perjury committed "on the trial of an indictment or information." But the word "information" is not used, and this court has no right to insert it, for our powers are judicial alone. This court is in no sense of the word a forum of legislation or an arena for political debate. Where there is an ambiguity in a statutory provision then we must resort to construction, but we have no power to add to or take from a plain and mandatory provision of the statute. It is not alleged that the perjury complained of was committed on a trial in

the district court of Roger Mills county of Jeff Curlee upon the charge of grand larceny on an indictment, but the record shows that the trial was had on an information and not upon an indictment. Therefore from the plain letter of the law the court erred in submitting the punishment to the jury under this subdivision.

There is also another reason why the court erred in giving this instruction. The perjury alleged to have been committed was not on the trial of an indictment for a felony, but was committed in support of a motion for a new trial, because the trial of Curlee for a felony had ended in his conviction. The trial of a felony begins with the impaneling of the jury and extends up to the reception of the verdict. A motion for a new trial is no part of the original trial itself. A defendant must be present during the actual trial, but his presence is not necessary when a motion for a new trial is submitted. See Ward v. Territory, 8 Okla. 12, 56 Pac. 704. The perjury in this case is not alleged to have been committed until after the trial of Curlee had ended. Therefore it was error for the court to give the instruction complained of. But because the court erred in giving the instruction complained of, does it necessarily follow that this conviction should be reversed? By no means should this be the case. It has been the settled policy of this court from the day of its organization not to reverse any conviction where the defendant was fairly tried and clearly proven to be guilty upon any error of the trial court which did not deprive the defendant of a constitutional right. Courts are not established as an arena in which contending counsel may use the processes of the law as a game of skill, but their sole purpose is to enforce justice, punish criminals, and suppress vice, and it is their duty to disregard all errors which do not involve substantial rights and result in ma-

terial injury to the defendant. This is the fundamental principle upon which all of the decisions of this court are based, and in conformity with this principle we do not hesitate to exercise our power to reform and modify judgments so as to cure if possible any error committed by the trial court.

We have absolutely no doubt as to the guilt of appellant and that his trial was in all respects fair with the exception of the instruction complained of. It is therefore our duty to see if this conviction cannot be sustained under the other subdivisions of the statute prescribing punishment for perjury. They are as follows:

Second. When committed on any other trial or proceeding in a court of justice, by imprisonment for not less than five nor more than ten years. Third. In all other cases by imprisonment not more than five years.

There is an ambiguity or obscurity as to the true meaning of this second subdivision. What is included in the words "or on any other trial or proceeding in a court of justice?"

In the case of Coleman v. State, 6 Okla. Cr. 252, 118 Pac. 594, it was held that perjury committed in a grand jury investigation was not included in this second subdivision because not committed on a proceeding in a court of justice, but that such perjury was punishable under the third subdivision of this statute, and that the second subdivision included perjury committed on any proceeding in a court of justice which proceeding might be reviewed by an appellate court. For a full discussion of these distinctions, see the case above referred to.

The second and third subdivisions of this statute cannot be understood without resorting to reasonable construction. By what standard shall this construction be

made? Shall it be by the common-law doctrine of a narrow and strict construction? If so, we might reach one conclusion; or shall it be by the modern doctrine of a liberal construction? If so, we might reach another conclusion. The lawyers of this state do not seem to realize that this court is unconditionally committed to the doctrine of a liberal construction of penal statutes. We regard the doctrine of a strict construction of the penal statutes as a relic of barbarism which should now be slumbering quietly in the grave with those other legal monstrosities: Bills of attainder and ex post facto laws. It has no more right to survive the progress of enlightenment than the law which gave a man the right to whip his wife, or the law which permitted the burning of women as witches.

Those courts which wish to do so may follow the common-law doctrine of a strict construction if they see fit, but this court will not parrot-like repeat and blindly adopt and follow their decisions. The lawyers of this state, when they realize and act upon this suggestion, will save themselves an immense amount of time and labor in hunting up and citing authorities from strict construction states. While we are forced to follow arbitrary statutes and to trust to the wisdom of the Legislature for their repeal, yet when it comes to the decision of courts law should be the perfection of reason and the embodiment of justice. From this standpoint there is no such a thing as good law and bad law. A general principle is either the law or it is not the law, and as to whether or not it is the law depends alone upon its reasonableness and justice.

The pivotal point in deciding this question is as to whether or not an affidavit made or deposition not given in open court, but made or given for the purpose of being used on a trial or in any other proceeding in a court of

justice, when so used comes within the meaning of the second subdivision of our statute; or as to whether or not such subdivision only includes perjury committed in the actual presence of the court. It may be said that where a witness testifies in open court he cannot be so easily induced to swear falsely as when he makes an affidavit and that on cross-examination in court he has an opportunity to fully explain just exactly what he means, and that therefore it is unfair to hold him to as strict an accountability as he should be held to if he testifies in open court, and that on this ground a distinction should be made between affidavits and testimony given in open court. But if a witness shall be misled into signing a false affidavit and he is prosecuted therefor, he can explain how he came to make the affidavit when on trial for perjury. If it be true that it has become a common habit in Oklahoma for persons to make affidavits upon the mere asking, without knowing anything about the truthfulness of the statements therein contained, the sooner this habit is broken up the better it will be for the morals of the people and the enforcement of justice. An oath taken under any circumstances implies verity, and the habit of careless swearing is something which courts should not tolerate or encourage.

In the case of Town of Checotah v. Town of Eufaula, 31 Okla. 85, 119 Pac. 1015, the Supreme Court of this state held that the word "deposition" as used in the statute includes affidavits. Therefore if a distinction is to be made between affidavits and oral testimony given in court, such distinction should also include depositions. If we hold that those witnesses who take the stand and testify falsely on any trial or proceeding in a court of justice shall be punished under the second subdivision of the statute, and that those witnesses whose affidavits or deposi-

tions are used on such a proceeding shall be punished under subdivision 3 of the statute, our decision would present an absurdity upon its very face. The oral testimony or the affidavits and depositions were made and introduced for the same purpose and would have the same effect upon the court, and, in the absence of a positive statute to the contrary, common sense, reason, and justice require that all perjury so committed should receive the same punishment. To hold otherwise would be to violate the Constitution, which in express terms declares that "laws of a general nature shall have a uniform operation throughout the state." See section 148, Williams' Const. of Oklahoma.

But suppose we hold that only those witnesses can be prosecuted for perjury under the first and second subdivisions of the statute who testify in open court; there is another still more alarming result which would necessarily follow from such a decision. In fact, its effect would be to make perjury safe in the courts of Oklahoma. To illustrate this: Section 6037, Rev. Laws 1910, is as follows:

"When a material witness for the defendant resides out of the state the defendant may apply for an order that the witness be examined on a commission to be issued under the seal of the court, and the signature of the clerk, directed to some party designated as commissioner, authorizing him to examine the witness upon oath or interrogatories annexed thereto, and to take and certify the deposition of the witness and return it according to the instructions given with the commission."

Under this provision of law a defendant in a criminal case in Oklahoma could have his witness remove to another state or to Canada. He could then apply to the court for a commission to take the depositions of such nonresident witnesses by a commissioner designated by the

court, and when said depositions were returned they could be read upon a trial. Now, if such witnesses could not be prosecuted for perjury in the court in which their testimony was used, where and by whom would or could they be prosecuted? Could they be prosecuted in the foreign jurisdiction where the false testimony was actually given? The commissioner taking such depositions would derive his authority to do so, not from such foreign jurisdiction, but from the Oklahoma court, and for the purpose of taking such testimony he would be an officer of Oklahoma. Therefore the crime committed would not be against the law where the false evidence was given but would be against the law of Oklahoma where the evidence was used. But even if foreign jurisdictions should treat the officer taking depositions as having power to administer oaths under the laws of such jurisdictions and hold that a crime was committed where the depositions were given by what process could such foreign jurisdictions force witnesses to come from Oklahoma to support a prosecution for perjury? This illustration clearly demonstrates the proposition that, if a prosecution for perjury does not lie in the court in which the deposition or affidavit was used, then perjury may be committed with absolute impunity in such cases, and justice may be defeated and debauched and the courts of Oklahoma degraded. No court worthy of the name will ever so construe a statute as to defeat the object for which it was enacted, and cause it to be used for the purpose of perpetuating wrong and injustice.

We are further fortified in our views by section 2217, Rev. Laws 1910, which is as follows:

"The making of a deposition or certificate is deemed to be complete, within the provisions of this article, from the time when it is delivered by the accused to any other person with the intent that it be uttered or published as true."

Under this statute the person before whom a deposition is taken or an affidavit is made becames the agent of the giver of such deposition or the maker of such affidavit until it is delivered to the place where it is intended to be used, and that place is the court in which the proceeding or trial is pending. Therefore the crime under the section subdivision of the statute is not complete until the affidavit or information is actually delivered to the court in which it is to be used. From these considerations we are of the opinion that when perjury is committed either in or out of court on any trial or proceeding in a court of justice, the punishment should be inflicted under the second subdivision of the statute. If this is not true then, any man in Oklahoma can be robbed of his property, life, or liberty, or the guilty can be acquitted on the perjured testimony of nonresident witnesses, and the law would not afford any redress. This proposition appears to be so plain to us that further argument or the citation of authorities is unnecessary. It is within the personal knowledge of the writer that during the days of the land forgeries in Texas many men were sent to the penitentiary for forging deeds in Kansas to lands in Texas and sending them to Texas for record. These men had never been in Texas until they were brought there to be prosecuted for forgery. These prosecutions were all upheld by the courts. Some of these cases were participated in by the writer, who was then prosecuting attorney. In the case of Graves v. People, 18 Colo. 170, 32 Pac. 63, the defendant Graves was charged with having sent a bottle of poisoned whisky through the mails from Providence, R. I., to Mrs. Barnaby in Denver, who died there from the effects of drinking said whisky. The writer of this opinion had charge of and conducted the defense of Graves. He then made the best examination he could of this subject and became so thoroughly satisfied that the

crime was committed in the jurisdiction where the offense was completed, that he did not even raise the question of the jurisdiction of the Colorado courts to try Graves, and Graves was convicted and sentenced to be hanged, but on appeal a reversal was obtained upon erroneous instructions of the court and the admission of illegal testimony. We could cite authorities indefinitely in support of our position, but we think it is a confession of ignorance and evidence of weakness to decide cases purely upon precedent. Any law clerk with a digest at hand can cite authorities in support of almost any proposition. The habit of doing this by courts is the cause of the confusion and conflicts which exist among the appellate decisions in the United States and is responsible for the contempt in which many courts are held by sensible people. We respect the opinions of other courts, but they are not binding upon us. At most, they are only persuasive, and their persausive force depends entirely upon the reason and justice of the principles they announce. We think that the reason and justice of the conclusion at which we have arrived are so manifest that it is unnecessary to cite authorities in support thereof.

To prevent any misapprehension from what is herein contained, we desire to say that if a false affidavit is made in any matter in which an oath may by law be administered, and the affidavit is not used or attempted to be used in a proceeding in a court of justice, then the punishment should be under the third subdivision of the statute.

To sum the entire argument up with reference to the question now before us and state it in the fewest possible words, the statute does not say that perjury must be committed in open court and during the progress of a trial, but the language is "when committed on any other trial, etc., in a court of justice." Beyond question the affi-

davit made by appellant is willfully and knowingly false, and it was made to be used on the trial of a motion for a rehearing of Jeff Curlee which was a proceeding in a court of justice, and with the intention on the part of appellant that it would be attached to and become a part of said motion for a new trial. The trial or proceeding must have been in a court of justice, and the perjured evidence must have been used therein. But the statute does not say that the witness must have perjured himself in the presence of the judge, and a liberal construction of the statute will not so limit its provisions. Therefore, under the doctrine of a liberal construction of the statute, this perjury was committed on the trial of said motion for a rehearing. To insist that under this statute only those who commit perjury in open court can be punished indicates a keener legal discernment and the capacity for seeing smaller things than is possessed by the members of this court. It is an illustration of the truthfulness of that passage of the scripture in which we are informed that sometimes men "swallow camels and strain at gnats."

Taking this view of the subject, we are of the opinion that the punishment should have been submitted to the jury under the second subdivision of the statute. It is true that there is a great difference between the punishment under the first and second subdivisions, and therefore it might be said that appellant was injured by receiving greater punishment than he would otherwise have received. But this is a defect which is within the power of this court to remove by modifying the judgment and so bringing the punishment within the provisions of the second subdivision as to make it impossible for appellant to have been injured thereby.

Section 6003, Rev. Laws 1910, is as follows:

"The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court."

See Turner v. State, 8 Okla. Cr. 11, 126 Pac. 452; Anderson v. State, 8 Okla. Cr. 90, 126 Pac. 840; Fritz v. State, 8 Okla. Cr. 342, 128 Pac. 170.

The punishment fixed by the jury in this case was ten years' imprisonment, and while it is not an excessive punishment for the offense of which the appellant is guilty, still it is the maximum punishment that could by law be inflicted for that offense under the second subdivision of the statute, and it is at the same time the minimum punishment that the jury were authorized to inflict under the instructions of the court as given, so to our minds it appears that this court cannot say that the defendant was not prejudiced to some extent by reason of the court's erroneous instruction as to the proper punishment in this case. Now to what extent could appellant have been harmed? Certainly he cannot be heard to complain if this court modifies the judgment and reduces the punishment to the minimum prescribed by statute.

Under the opinion of the Supreme Court of South Dakota in Re William W. Taylor, 7 S. D. 382, 64 N. W. 253, 45 L. R. A. 136, 58 Am. St. Rep. 843, the sentence in excess of what the law permits does not render the legal or authorized portion thereof void, but only leaves the excess open to question and attack. In this case the punishment is not excessive, but to our minds should be deemed to be excessive by this court because of the limitations placed upon the jury by the trial court in his instructions; the jury having found the minimum punishment it could ar-

rive at under the instructions of the court. For that reason we think that this punishment is excessive, and under the power of this court expressly given by statute to modify as well as to affirm or reverse judgments, the power rests with this court to determine how much, if any, of this punishment under the record in this case is excessive, and we think that it would be entirely proper that the state should accept a remittitur of five years of this sentence. In support of the position here taken and of the power of this court in this connection we call attention to the following decision: People v. Seller, 58 Mich. 327, 25 N. W. 304. In this case the prisoner was sentenced to imprisonment for eight years, under the ordinary charge of the larceny of a horse and harness of the value of $175, to which offense he pleaded guilty, and the judgment was reversed to the extent that the imprisonment should be for five years. The court stated that as the law then stood a sentence which was merely bad for excess might be reversed for the excess and left to stand for so much as could be lawfully imposed. See, also, Vaughan v. State, 83 Ala. 55, 3 South. 530; People v. Pierce, 19 Misc. Rep. 83, 41 N. Y. Supp. 858; Daniels v. Commonwealth, 7 Pa. 371; State v. Shaw, 23 Iowa, 316.

In the latter case the court inflicted a fine of $25, which was held to be beyond the amount authorized by the statute; but, as the Attorney General confessed the error and offered to remit the fine of $5, the judgment was modified and as so modified was affirmed. In our opinion this is the proper course for this court to pursue in this case.

In State v. Brannon, 34 La. Ann. 942, the prisoner was indicted for the crime of larceny and was sentenced to work upon the streets 60 days and pay costs, and in default of payment was condemned to work 20 days longer. The court held that under no law applicable to the case

could the accused be condemned to additional punishment exclusively to pay the costs of the prosecution, and decreed that the judgment should be amended by striking therefrom that part which imposed additional labor in default of payment of costs, and as thus corrected the sentence should be affirmed. See Lowrey v. Hogue, 85 Cal. 600, 24 Pac. 995, for a similar holding. In other states the judgment has been ordered modified and the case remanded to the trial court to pronounce another judgment in accordance with the appellate court's order. See State v. Lawrence, 81 N. C. 522; State v. Cook, 61 N. C. 535; and numerous other North Carolina cases.

In Territory v. Conrad, 1 Dak. 363 (348), 46 N. W. 605, where the sentence was in excess and illegal but the defendant was legally and regularly convicted of a misdemeanor, the court affirmed the conviction, but modified the judgment and remitted the case to the court below so that the proper judgment might be imposed. See Hussy v. People, 47 Barb. (N. Y.) 503; People v. Varnard, 6 Cal. 562.

In Hathcock v. Ga., 88 Ga. 91, 13 S. E. 959, the appellate court dictated a modification of the imprisonment part of the sentence so as not to exceed the limits authorized by the statute. See Ratzky v. People, 29 N. Y. 124.

In this case a death sentence was passed under a statute that did not govern. The case was reversed as to the sentence, and the record remitted to the court below with directions to pronounce judgment in accordance with the statute governing the case. This was done also in McKee v. People, 32 N. Y. 239.

In Harris v. People, 59 N. Y. 603, the punishment imposed was greater than that fixed by law, as the trial was legally conducted and the conviction was legal, and

the sentence alone illegal, the court refused to reverse the judgment of conviction, but remanded the case to the court below that the proper sentence might be given under the power conferred by statute.

That where a judgment is pronounced in excess of that authorized by law only the excessive part is void, we cite the following cases: Ex parte Sweatman, 1 Cow. (N. Y.) 144; People v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211; People v. Jacobs, 66 N. Y. 8; People v. Baker, 89 N. Y. 400; Ex parte Shaw, 7 Ohio St. 81, 70 Am. Dec. 55; Ex parte Van Hagan, 25 Ohio St. 526; In re Graham, 74 Wis. 450, 43 N. W. 148, 17 Am. St. Rep. 174; s. c., In re Graham, 138 U. S. 461, 11 Sup. Ct. 363, 34 L. Ed. 1051.

In the last case Mr. Justice Field of the Supreme Court of the United States said:

"That the prisoner should not have been sentenced for any time in excess of ten years is very evident. When the ten years have expired it is probable the court will order the prisoner's discharge, but until then he had no right to ask the annulment of the entire judgment. Such being the ruling of the state court, and there being nothing in it repugnant to any principle of natural justice, we think that the reason given for a refusal of the writ of habeas corpus in the court below at the present time was a sound one."

While there are conflicting opinions upon this question, we think the soundness of the opinions expounding the above doctrine cannot be questioned.

The crime of perjury is one of the gravest felonies known to the law, and justice cannot be administered alike to the accused as well as to the people unless the courts administer the proper punishment to those who have the temerity to enter their portals and on false, perjured testimony acquit the guilty and send innocent men to suffer

unjust punishment. The protection of Curlee in his trial from perjured testimony on the part of the state demanded of him that he should not produce in court any witness who he had reason to believe was perjuring himself in his behalf, and how easy it would have been for him to have found out from the jurors in this case that the statements contained in this affidavit were without foundation and void.

Simple justice demands that the man who will enter the courts of this state in an attempt to thwart the just punishment of a guilty criminal and thereby defeat the just and righteous administration of our laws should be severely punished.

While we do not think that the sentence of ten years as imposed by this jury is in any respect too severe to fit the crime, yet in view of the fact that the court, as we believe, by a mistaken impression as to the law limited their consideration to a minimum punishment five years in excess of what the law provides, it is ordered that the judgment be modified, and that the punishment of appellant be fixed at five years' confinement in the penitentiary, and that the judgment as modified be in all things affirmed.