### L. A. LOVE v. STATE.

No. A-1927. Opinion Filed August 30, 1915.

(150 Pac. 913.)

1. APPEAL—Objection Below—Information. An objection to the sufficiency of an information cannot be raised for the first time upon appeal, unless it is an objection to the jurisdiction of the trial court over the subject matter of the information.

2. APPEAL—Weight of Evidence—Credibility of Witnesses. The jury are the exclusive judges of the credibility of the witnesses as well as the weight to be given to their testimony, and where the evidence is sufficient to support the verdict, this court will not reverse the judgment because the greater number of witnesses may have testified favorably to the defendant on the principal points in the case, unless it appears from the record that the jury were influenced by improper motives in arriving at their verdict.

3. HOMICIDE—Instructions. In a prosecution for intentionally and wrongfully shooting another with a pistol with intent to kill, an instruction that if the jury do not find from the evidence that the defendant shot said person with a specific intent to kill, "but you do believe from the evidence beyond a reasonable doubt that the defendant shot said Hollis with a pistol, and you find that such pistol was capable and sufficient to inflict death to a person shot therewith, then it will be your duty to find the defendant guilty of the offense of an assault and battery by means of a deadly weapon, as defined in paragraph three of these instructions," Held, prejudicial to the defendant as abstractly erroneous, and not applicable to the evidence adduced and inconsistent with the instructions submitting the included offense of shooting with intent to injure any person, but without intent to kill such person.

4. INSTRUCTIONS—Intimation of Opinion. Instructions couched in language which implies the expectation of the court that a verdict of guilty will be returned, or an intimation that it is the duty of the jury to convict, or which tend to shift the burden of proof, are improper.

5.    **VERDICT**—Construction—Validity.   While verdicts in criminal cases should be certain and free from ambiguity, yet any words that convey, beyond a reasonable doubt, the meaning and intention of the jury are sufficient, and all fair intendments will be made to sustain them.

*Appeal from District Court, Roger Mills County;*
*C. A. Brown, Judge.*

L. A. Love, convicted of felonious assault, appeals. Reversed.

*J. W. McMurtry* and *A. J. Welch,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   Plaintiff in error, was convicted upon an information which omitting merely formal parts charges:

"That within the county of Roger Mills, state of Oklahoma, on the 17th day of December, A. D. 1911, one L. A. Love late of the county aforesaid, did then and there unlawfully, knowingly, feloniously, purposely and with premeditated design to effect the death of one W. C. Hollis, shoot, fire and discharge at, toward and into the body and person of the said W. C. Hollis, one certain pistol, which he, the said L. A. Love then and there had charged and loaded with gun-powder and leaden balls, and the said L. A. Love then and there had and held in his hand, which said pistol was then and there charged and loaded with gun powder and leaden balls, and the said L. A. Love with said pistol so loaded and charged as aforesaid and in his hand so held and had as aforesaid, and with a premeditated design to effect the death of the said W. C. Hollis, did then and there shoot, fire and discharge the said pistol at, toward and into the body and person of the said W. C. Hollis, with the intent then and there and thereby, him, the said W. C. Hollis, unlawfully, feloniously, purposely, wrongfully, wilfully and knowingly and with the premeditated design and malice to kill and murder, contrary to," etc.

The jury rendered the following verdict:

"We, the jury empaneled and sworn to try the issues in the above entitled cause, do upon our oaths, find the defendant L. A. Love, guilty of an assault and battery committed upon W. C. Hollis with a pistol and with which he shot W. C. Hollis with

intent to injure said Hollis and without justifiable or excusable cause therefor, and we fix his punishment at imprisonment in the state prison for the period of one year."

To reverse the judgment rendered in accordance with the verdict, the defendant appeals. The evidence for the state briefly stated was as follows:

The prosecuting witness, W. C. Hollis, testified that he and his partner, W. L. Arnold were running a short order restaurant and lunch counter in the town of Hammon; that on the night of the shooting the defendant and D. C. McCullum came into his place of business between ten and eleven o'clock, and each ordered an oyster stew; that his partner, Arnold, took the orders and witness prepared the same in the kitchen and brought them to the counter. The defendant was talking to some one; his attention was called to the fact that his stew was getting cold, and he turned around, picked up the soup bowl and threw it on the counter. Witness said: "Nobody is bothering you, why did you do that, nobody said anything out of the way to you and there is no use tearing up everything," and the defendant said he would tear up the whole thing and throw it out. Witness went around in front of the counter and told the defendant that if he started anything he would throw him out. The defendant walked away and then came back and apologized. About one o'clock in the morning witness said to those in the restaurant, including the defendant and one Jack Gore, that it was getting late and then went behind the counter and blew out the light next to the window. The defendant Gore and others went out and witness fastened the door with a button. That W. K. Fretwell was in there and was going to sleep with witness in the restaurant. Shortly after someone rattled on the door and he did not answer; then someone shoved against the door and it flew open; that he went to the door to see who it was and the defendant was there. That he asked him what he wanted and the defendant commenced shooting and shot witness through the legs; that he got hold of the defendant's gun and Mr. Arnold came in and took the pistol; that as the gun went off the last time he had the defendant down, but did not know what he was doing to him.

That Arnold pulled witness off the defendant and held him until the defendant left; that the defendant fired five shots; that he could not tell whether the defendant was drunk or sober. That witness did not have a gun of any kind.

On cross-examination he was asked:

"Q. Do you say Love shot you? A. I have got these wounds. I don't know whether he did yet or not."

Dr. V. C. Tizzle testified that he was called to treat the prosecuting witness, and found flesh wounds on both thighs and on the left arm, that he could not say that these wounds were dangerous or likely to produce death.

W. H. Arnold testified that he went to bed about 12 o'clock in a little place cut off back of the kitchen to sleep in. That hearing a noise in the restaurant he jumped up and put on his pants and went in and hollowed to Judge Love to quit shooting and ran and grabbed the gun and it went off once after he got hold of it. That later he gave it to the city marshal; that it was a five shot Smith-Wesson pocket pistol; that Hollis had the defendant down on his back and was choking him with some effect and he pulled Hollis off; that Hollis and W. K. Fretwell, commonly called "Shorty" had a bed by the side of the stove in the restaurant.

W. K. Fretwell testified that he was outside when he heard a shot and went in but did not see who fired the shots; that about five minutes before the shooting took place witness and Hollis had a scuffle, but neither were angry.

For the defense, L. A. Love, as a witness in his own behalf testified that with McCullum and Gore he entered Hollis and Arnold's short order joint and ordered an oyster stew and while sitting there talking over a business affair, Arnold tapped him on the arm and insisted on his eating the soup. That he said "Go on, the soup will be paid for, I will eat it presently." Then Hollis made the same request and it irritated him a little and he put his finger on the bowl and turned it over on the counter. That Hollis came from behind the counter and commenced fussing about it and he apologized and told him that he was sorry that he had lost his temper, and Hollis said it was all right, and

invited them to the back room to take a drink with him; that McCullum declined and witness and Gore accepted the invitation. Shortly after he left the place and went to his room in the Hammond News office and from there to the Valley Hotel; that about an hour later while walking along the street opposite the restaurant he heard some one hollowing in there and looking across he saw two men struggling, one was calling for help, and he went across the street and opened the restaurant door and asked what was going on in there; that about that time Hollis said something and struck him on the head with a heavy stool; that he grabbed him and they both went down together and he reached into his pocket and pulled out a little pistol. That he asked Hollis to let him up; that Hollis kept on fighting and he fired two or three shots and Hollis fired two or three shots; that one shot struck him in the hand and other passed through his clothes and he had a bruise on his head that was sore for a month; that he knew that they all had been drinking and he went there to see if he could not stop the trouble; that Shorty Fretwell was struggling with Hollis when he opened the door and Hollis was intoxicated. That Shorty Fretwell and a fellow named McBee peddled whisky and made the restaurant their headquarters.

On cross-examination he said he had been drinking some that day and had bought the whisky from Shorty Fretwell and McBee and had bought whisky there in the restaurant.

D. S. McCullum testified that he went to the restaurant with Gore and Love and after the soup incident something was said about taking a drink. That Gore and Love and McBee went back to the kitchen, and all the parties concerned acted like they had had a few drinks.

Walter Stevenson testified that he and J. D. Williams were standing in front of the restaurant when the trouble started; that he looked in the window and they seemed to be pulling off a fight of some kind in there and Judge Love came along and opened the door and walked in and asked what was going on in there, or something like that, and Hollis grabbed up a stool or

chair and hit him over the head and they got to scuffling and went to shooting and witness ran over to the pool hall.

Dr. George H. Wallace testified that he was called to treat Judge Love and found a gun shot wound on the hand and a wound over the right eye and an abrasion near the knee, something like two inches in length; that seemed to have been made by a bullet.

Upon a careful examination of the record the conclusion of the court is that the judgment in this case should be reversed. In the first place the information charges the common-law offense of assault with intent to murder. There is no such offense known to our statute. There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. However, the information was not challenged by demurrer thereto or by motion in arrest of judgment, and in the lower court no claim was made that it was defective in any way. An objection to the sufficiency of an information cannot be raised for the first time upon appeal, unless it is an objection to the jurisdiction of the trial court over the subject of the information, or when the facts alleged do not constitute a public offense. Considering the allegations of "premeditated design and malice," and to "murder," as mere redundance, we think the information is sufficient to charge the offense of assault with intent to kill by shooting with a pistol.

We shall next consider the assignment of error that the verdict was contrary to the evidence, and the evidence was insufficient to sustain the verdict. It is true that the testimony of the prosecuting witness is the only evidence tending to show that the defendant was the aggressor, and that the testimony tending to show that the prosecuting witness harbored bootleggers in his place of business, was undisputed, and that the defendant's testimony that the prosecuting witness was the aggressor was corroborated by other witnesses. However, it is not for this court to determine the question of the defendant's guilt or innocence by ascertaining whether, as an original proposition we would be satisfied of his guilt beyond a reasonable doubt. By

numerous decisions of this court it has been held that the jury are the exclusive judges of the credibility of the witnesses, as well as the weight to be given to their testimony, and a finding by the jury on conflicting evidence on an issue of fact will not be interfered with, unless it appears from the record that the jury were influenced by improper motives in arriving at their verdict.

The record discloses that exceptions to each and all the instructions given by the court, were properly preserved, and further exceptions were preserved to the refusal of the court to give requested instructions. However, we deem it unnecessary to reproduce in full the instructions given and refused. Plaintiff in error complains that the court erred in giving the following instructions:

"1. Every person who intentionally and wrongfully shoots another with any kind of a fire arm with intent to kill such person is guilty of a felony and may be prosecuted and convicted therefor.

"3. The information in this case includes the offense mentioned in paragraph number one of these instructions, and also the offense of an assault and battery by means of a deadly weapon.

"4. It also includes the offense of shooting another with a fire arm with intent to injure him, although without an intent to kill such person, but without justifiable or excusable cause therefor.

"6. If you find from the evidence beyond a reasonable doubt that the defendant, L. A. Love, in Roger Mills county, state of Oklahoma, on or about the 17th day of December, 1911, with a fire arm or gun, to-wit: a pistol, did intentionally and wrongfully shoot W. C. Hollis with the intention then and thereby to kill him, the said Hollis, then you will find the defendant guilty of the offense defined in paragraph number one of these instructions, and so say by your verdict.

"7. If you do not find from the evidence beyond a reasonable doubt that the defendant wrongfully shot said Hollis with the specific intent then and thereby to kill, but you do believe from the evidence beyond a reasonable doubt that the defendant wrongfully shot said Hollis with a pistol, and you find that such pistol was capable and sufficient to inflict death to a person shot

therewith, then it will be your duty to find the defendant guilty of the offense of an assault and battery by means of a deadly weapon as defined in paragraph three of these instructions, and so say by your verdict.

"8.  If you do not find and believe from the evidence beyond a reasonable doubt that the defendant is guilty of either of the offenses defined in paragraphs one and three of these instructions, but you do believe from the evidence beyond a reasonable doubt that the defendant at the time and place alleged in the information shot the witness W. C. Hollis with a pistol with intent to injure him, and that such shooting was without justifiable or excusable cause, then it will be your duty to find the defendant guilty of the offense described in paragraph number four of these instructions and so say by your verdict.

"9.  If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of the offense charged in paragraphs one or three, or of the offense charged in paragraph four of these instructions, but you have a reasonable doubt as to which of such offenses he is guilty, then you must give him the benefit of the doubt and find him guilty of the lesser offense, to-wit, of that defined in paragraph four of these instructions."

It will be observed that the court instructed the jury that the defendant was charged with the offense defined by the first clause of section 2336 of the Penal Code, said section provides that:

"Any person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of fire arm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding ten years."

Our Penal Code defines other felonious assaults by the use of deadly weapons besides assault with intent to kill.  Section 2344 provides:

"Any person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of fire arm or airgun, or other means whatever, with

intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years; or by imprisonment in a county jail not exceeding one year."

Under the charge of intentionally and wrongfully shooting with a pistol with intent to kill, and under the evidence in the case, the exceptions to instructions numbered three and seven as given by the court, were well taken. Said instructions are not applicable to the facts in evidence in this case. In instruction number seven, the court told the jury in brief, that if they did not find from the evidence that the defendant shot Hollis with a specific intent to kill, but did believe from the evidence that the defendant wrongfully shot said Hollis with a pistol, and further find that such pistol was capable and sufficient to inflict death to a person shot therewith, then it would be their duty to find the defendant guilty of an offense defined by section 2336. This instruction is not only subject to the criticism that it is argumentative, but it is not a correct statement of the law applicable to the second clause of said section 2336 intended to be thereby submitted, and it is manifestly inconsistent with instruction number eight which submits the lesser included offense of shooting with intent to injure any person, but without intent to kill such person, as defined by section 2344.

The language o fthe court in instructions numbered eight and nine is also complained of. We think the language complained of might have been understood by the jury that the court expected a verdict of guilty, or the jury might construe the language used as an intimation that it was the duty of the jury under the evidence to find the defendant guilty of the offense charged, or an included offense. When the defendant may be convicted of a lower degree of the offense charged the instructions should cover the lower degrees, and the jury should have been instructed that if after a fair and impartial consideration of all the evidence in the case they were not convinced beyond a reasonable doubt of the defendant's guilt, as charged in the information, then it would be their duty to consider as to whether he was guilty of the next lower offense embraced in the charge.

*Nichols* v. *The State,* 10 Okla. Cr. 247, 135 Pac. 1071.

Finally it is contended that the verdict is insufficient to support the judgment. The difficulty with the verdict rendered in this case is, that it is vague and uncertain. First the jury in effect find the defendant guilty of the offense defined and submitted by instructions numbered three and seven. That is, assault and battery by means of any deadly weapon as defined by the second clause of section 2336 already quoted. Which instructions are herein held to be erroneous and not applicable to the evidence adduced.

However, considering the qualifying language used it would seem that the intention of the jury was to find the defendant guilty of assault with intent to do bodily harm by shooting with a pistol. While verdicts in criminal cases should be certain, and free from ambiguity, yet any words that convey, beyond a reasonable doubt, the meaning and intention of the jury are sufficient, and all fair intendments will be made to sustain them. Assault with intent to do bodily harm as defined by section 2344 *supra,* "is punishable by imprisonment in the penitentiary not exceeding five years or by imprisonment in a county jail not exceeding one year." Where, as in this case, upon a verdict finding the defendant guilty of the offense defined by said section 2344, the jury fixes the term of imprisonment at one year or less, such limited term must be executed by confinement in the county jail and not in the penitentiary. As the judgment must be reversed, it is unnecessary to correct and modify the same. For the error in the charge of the court, the judgment is reversed.

FURMAN and ARMSTRONG, JJ., concur.