CHARLES CARTER v. STATE.

No. A-6312.   Opinion Filed Jan. 12, 1929.
(273 Pac. 376.)

Leverett Edwards, Leon S. Hirsh, and Roff & Threadgill, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Osage county, upon an information charging that he did

unlawfully and feloniously, by fraud and stealth, take, steal, and drive away one Ford touring car, and was sentenced to imprisonment in the state penitentiary for a term of 10 years. Motion for new trial was filed and overruled, exceptions saved, and the defendant has appealed to this court.

The testimony of Fel Lackey, a witness on behalf of the state, is in substance as follows: That the defendant went to the business place of Brown Westerman, known as "Rent a Ford," in the city of Pawhuska, on the 3d day of August, 1925; that the business was in Fel Lackey's charge, and that he rented a Ford touring car; that the defendant first came to the place and was advised about the rental, and went away and came back shortly thereafter; that he handed witness Lackey a check for $20, this being the amount required as a deposit when a car was rented to a party; defendant did not mention any time he was to return; ten hours was the customary time to keep a car out; that he never saw the car any more after the defendant drove away, but several days thereafter some one phoned, saying they thought they had located the Westerman car at Idabel. The defendant signed up on page 696 of a book. Book presented and signature identified. Witness also presented the page where it was signed up, and it was introduced as evidence; also the check that was left with him as a deposit, which check shows to have been made payable to J. A. Bethune, for $20, drawn on the First National Bank of Hominy, Okla., purported to be signed by J. H. McClure. Witness identified defendant as being the man who signed up and took the car away from the office in 1925.

On cross-examination witness was asked if there were not two men, and witness answered that he did not know whether there was one or two men; he further stated he was sure there was only one man said anything about wanting the car; there may have been another man with

defendant, but he did not remember; he could not say for sure if there were some one with defendant when he came in; "as defendant started to take the car out, I requested him to make a deposit, and he handed me the check," which had been introduced in evidence. "I did not see the check written. I was working for Mr. Westerman, in charge of the place, when he got the car. I let the defendant have the car to take out and drive with the understanding that he was to pay for it."

On further cross-examination, witness stated he was sure defendant was at the place of business twice. "I do not know where the defendant got the check. We never sent the check to the bank. We phoned the bank at Hominy, on which the check was drawn, and it replied that J. H. McClure had no account with the bank."

C. E. Sweet, called as a witness on behalf of the state, testified he lived at Idabel, about 400 miles southeast of Pawhuska, during the month of August, 1925; that he was a constable; that he knew the defendant; that he saw the defendant about 1½ miles north of Idabel, near a Ford touring car. It was the Ford touring car that Mr. Freas and Mr. Westerman came for. Defendant had quite a lot of stuff in the car at the time, new tubes, traveling bags, and new stuff; the tags on the car had been partly broken off; the defendant was not at the car; he was a short distance away from it; said he was in the real estate business; he was drunk at the time of his arrest; defendant said his home was at Marlow, Oklahoma.

J. R. Jones, sheriff of McCurtain county, testified to the same facts as did witness Sweet, as to the things found in defendant's possession at the time he was arrested. S. R. Byran, the undersheriff of McCurtain county, was called as a witness, and among other things stated defendant told him his name was Charley Carter; said he had a brother, who lived at Marlow, in the real estate business; that he

was down in McCurtain county getting leases for his brother.

The defendant, as a witness in his own behalf, testified as follows:

"I live at Marlow. I am a married man. I work for my brother, who is in the land business; have lived in Oklahoma all my life; went to Marlow in 1910; had been in McCurtain county a good deal prior to my arrest. My business there at the time I was arrested was getting leases for my brother. When I came to Pawhuska, Hickman Gibson came with me. We came to Fairfax, in Osage county. I went to a brother-in-law and sister-in-law, Gibson Dixon and his wife, at Fairfax. I did not know a man by the name of J. H. McClure. He knew a man by the name of McClure. It was J. H. Bethune. I don't know what the initials of McClure was. While I was in Osage county, I came to Pawhuska. McClure, Bethune and Gibson came with me. We went from Pawhuska back to Fairfax. We fooled around in Pawhuska and got to drinking, and decided we would go back to Fairfax that evening. We had been drinking since morning; as soon as we got over there, we began drinking beer. I don't know—we drank quite a good deal. McClure and Bethune was acquainted with some boys here. We was drinking a little bit before we came here. I went down to see about a car, and Gibson went with me. We went over to the Rent a Ford station, Mr. Westerman's place. We asked about a car, and he said we could get one. We did not know for sure then we would want it, and told him we would come back after a while. He told us the price, but I don't remember what the rate was, so much a mile or so much an hour. He said we would have to put up a $20 deposit. Gibson and I were together at the time. The other fellows were down on the creek. We went back down on the creek, and stayed around a while, and got some more choc. When we got back down to the creek, we told McClure and Bethune what the deposit was, and McClure agreed to pay it. He gave Bethune a check, and Bethune gave me the check to put up as a deposit. It must have been 5 o'clock when we went back to get the car. I told him we wanted a touring car, and gave him the $20 check and run the car out myself. Bethune and the man in charge of the business

went in the office together. I did not write the signature that is State's Exhibit A. I did not sign the check or indorse it. I did not sign any rental contract or agreement whatever. When we got the car, we aimed to go to Fairfax, and would get back that night. We went down the creek to where the boys were, and then went to Fairfax. When we got to Fairfax, we went down to Noah Hamilton's. We did not stay long; Noah Hamilton was not at home. We went on to Hominy. Gibson wanted to go on east after we took him to Hominy. He said he wanted to go down in Choctaw. Gibson drove the car from the time we left the creek at Pawhuska until we got to Poteau. We kept supplied with whisky all the way down. When we got the car, I did not know that Gibson wanted to go to the Choctaw country. No one had said anything about going anywhere, but to Fairfax, when we got the car. The hand bag in the car was McClure's, and I did not know what was in it until after we got down to Poteau. He opened the grip to put some whisky in, and I saw what was in the grip. He said the women's clothes belonged to him and that he must not lose them.

"There was one tag on the car. The tag that was on the front belonged to somebody down in McCurtain county. We found it in the road down there at Idabel. I don't remember who found it, but Gibson put it on the car. Three of the first numbers of the tag that was on were broken off, to make it match the one we found and put on the front of the car. On Saturday night Gibson was driving the car and run it off the road. He got mad, and began fighting the other two boys, and they ran off or got away. Gibson went to a house to get a team to pull us out, and the first house he went to the fellow did not have a team. The fellow was on crutches or a wooden leg. When the fellow came down to the car, Gibson got into the car and gave him a drink. We did not have anything but beef, wine, and iron, and this fellow would not drink that, and we put it back in the car and the law came. Gibson went up to a fellow's house, and the team was in the field. The man and the Indian, Gibson, went out to hunt them, and, while hunting the team, the law came and got Gibson. After Gibson was arrested, I started back down to the car. I did not see Gibson any more, nor did I see McClure or Bethune after Gibson was arrested. At the time I was placed in jail at Idabel, they preferred a charge of drunk-

enness against me, and I paid the fine. I have tried to find McClure and Bethune since I got out of jail, but I have not been able to locate them, nor have I seen Gibson. I did not intend to keep the car when I hired it. When I was arrested, I was on the road between Broken Bow and Idabel."

The defendant called a witness by the name of Tucker, who testified to defendant's previous good character. This is in substance all the testimony we deem material.

The first assignment of error discussed by the defendant is: "That the court erred in overruling the demurrer of the plaintiff in error to the information in said cause."

An examination of the case-made shows that on October 5, 1925, what purports to be a demurrer to the information was filed in the clerk's office, which demurrer was unsigned, and is as follows: "Comes now the defendant, C. L. Carter, and demurs to the information filed herein, on the grounds and for the reason that said information wholly fails to allege a commission of an offense against the laws of the state of Oklahoma."

The record further shows that on October 5, 1925, in criminal No. 1535, Charles Carter, alias Jim McClure, same being one of the regular days of the September term of the district court, the defendant was called for arraignment; defendant present in person and by counsel. County attorney present for state. Defendant, now duly arraigned, waives time; waives reading of information; enters plea of not guilty. Copy of information served on defendant in open court. Bond fixed in the sum of $2,500.

Section 2609, Comp. St. 1921, provides: "The demurrer must be in writing, signed either by the defendant or his counsel, and filed. It must distinctly specify

the grounds of the objection to the indictment or information, or it must be disregarded."

As disclosed by the record, what is claimed to be a demurrer was not signed by either the defendant or his counsel, and does not comply with the requirements of the statute. Counsel for the defendant did not think enough of the demurrer to present it to the court, and ask the court to rule on the same before the plea was entered. We think the failure of counsel to present the demurrer to the court and secure a ruling thereon was necessary before the plea of not guilty was entered; that it might not waive the right of the defendant, except jurisdictional or fundamental errors appearing on the face of the information.

In Franklin v. State, 17 Okla. Cr. 348, 188 P. 686, the court said: "Where the defendant fails to question the sufficiency of an information as authorized by the provisions of the Code of Criminal Procedure, he in effect waives any and all defects, except such as are fundamental."

In White v. State, 4 Okla. Cr. 146, 111 P. 1012, this court said: "If the indictment was defective this matter should have been called to the attention of the trial court by proper motions before the defendant entered his plea. This is the reason why the defendant is allowed by statute one day in which to plead. If the defendant enters his plea and waits until the introduction of the evidence to object to the sufficiency of the indictment, the objection should be overruled if by any possible construction or intendment the indictment can be sustained."

It is the opinion of this court that the failure of the defendant to interpose a proper demurrer to the information, and to secure a ruling of the court on said demurrer, prior to entering his plea of not guilty, constituted a waiver of all but jurisdictional or fundamental errors.

None of the objections urged to this information are jurisdictional or fundamental. There being no adverse ruling on the demurrer, there is nothing for this court to review. McGill v. State, 16 Okla. Cr. 657, 185 P. 530; McGaugh v. State, 12 Okla. Cr. 96, 152 P. 140; Love v. State, 12 Okla. Cr. 1, 150 P. 913.

Any question that could have been raised by a proper demurrer to the information was waived by the defendant entering his plea of not guilty. Section 2120, C. O. S. 1921, the statute on which this information is based, reads as follows: "Any person in this state who shall steal an automobile or other automotive driven vehicle shall be guilty of a felony, and upon conviction shall be punished by confinement in the state penitentiary for a term of not less than five (5) years, nor more than twenty (20) years."

In State v. Underwood, 17 Okla. Cr. 443, 190 P. 281, this court held: "The common-law doctrine of a strict construction of criminal law and all proceedings in criminal cases, and that an information should be certain to a certain intent in every particular, is not in force in Oklahoma."

It is urged by the defendant that the information did not allege facts sufficient to apprise the defendant of the charge he must be prepared to meet. With this contention we cannot agree; we think the defendant fully understood the charge brought against him, and as a witness in his own behalf he admitted he got the car and drove it away.

He claims other parties were with him, yet he was unable to locate either of the parties, one of whom he claims signed the check he left with the man from whom he secured the car. This is an unusual case. The car was taken from Pawhuska by the defendant, and was not returned, and several days thereafter the defendant was

found in possession of the car, about 400 miles southeast of Pawhuska, in McCurtain county. He says he intended to return the car. The defendant is presumed to know the consequences of his own acts, and his intent must be judged by his acts. Up until the time of his arrest, so far as the record discloses, he had no communication with the parties from whom he secured the car, nor had he made any effort to return it, and the proof shows that he was found on the road north of Idabel, on the road between Broken Bow and Idabel.

The defendant urges with great force that the state utterly failed to prove any fraud on the part of the defendant in obtaining the consent of the owner, or his agent, in the taking of the car, and he urges that the check that was deposited with the owner of the car was not presented to the bank for payment, and for that reason it was not dishonored. The evidence on behalf of the state is that the First National Bank of Hominy was phoned by the agent of the owner of the car, and that the bank replied that no such person as J. H. McClure had an account with the bank. The defendant does not insist that the check he deposited with the agent of the owner of the car was good at the time, nor does he attempt to show that a man by the name of J. H. McClure carried an account with the First National Bank of Hominy, or that he had any credit with the bank and believed the check would be honored and paid when presented.

Defendant cites the case of Kilgore v. State, 25 Okla. Cr. 69, 219 P. 160. In the Kilgore Case, he was prosecuted under what is known as the bogus check law, and the court in the body of the opinion says: "We think, therefore, that the motion for a directed verdict should have been sustained, as the proof of the essential elements of the bogus character of this check on the part of the state was merely hearsay, and the proof by the defendant's

witness tends to support the defense interposed that he had credit with the bank and believed the check would be honored by the bank upon presentation to it."

The facts in this case are somewhat different from the facts in the Kilgore Case, as the defendant made no effort to establish that J. H. McClure had an account with the bank at Hominy and believed the check would be honored when presented. Counsel for the defense argue that the only fraud, if any, practiced by the defendant, was the giving to Westerman a check on the First National Bank of Hominy for $20, signed with the name J. H. McClure, and claim that, since the check never was presented to the bank for collection, there is no proof of its bogus character, and hence no proof of fraud. The owner of the car required a deposit to be made as evidence of good faith on the part of the one who hired the car to use the car for a limited time, specified in the contract, to satisfy the owner that the charge for the hire would be paid. The proof in this case shows conclusively that the defendant, if he ever intended to comply with the contract, clearly violated the terms of the same by converting the property to his own use. We think it was immaterial whether the check was presented to the bank, or whether it would have been paid when presented. The evidence of the defendant and his subsequent actions clearly show when he got possession of the car he intended to appropriate it to his own use and deprive the owner of his property.

The defendant urges that the court erred in excluding certain testimony sought to be brought out by defendant in the cross-examination of the witness Lackey, which related to the intention of the agent of the owner of the car at the time the car was received by the defendant. The action of the court in sustaining the objections of the state to the questions propounded by counsel for defendant did not prejudice the rights of the defendant.

Some complaint is made of the court's instruction No. 7, but we find no such material error as requires a reversal. The instructions considered in their entirety fairly stated the law applicable to the facts in this case. Upon a consideration of the entire case, we are convinced that the defendant was fairly tried. The evidence is sufficient to sustain the verdict.

The case is affirmed.

DOYLE, P. J., and EDWARDS, J., concur.