## HARVEY FANNIN v. STATE.

No. A-9403. March 17, 1939.

(88 P. 2d 671.)

446

W. J. Crump, of Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. On information charging that Harvey Fannin, in Muskogee county, on the 26th day of September, 1936, did then and there, "commit the crime of 'assault with intent to rape' in the manner and form as follows, to wit: That the said Harvey Fannin did then and there knowingly, willfully, unlawfully, wrongfully, and feloniously make an assault in and upon one Lenora Ragsdale, a female person not his wife, with his hands and fists, and did then and there with his hands and fists, beat, bruise, wound and injure the said Lenora Ragsdale,

with the unlawful and felonious intent then and there on the part of the said Harvey Fannin, to have sexual intercourse with the said Lenora Ragsdale, forcibly and against her will; contrary to," etc., he was tried and convicted, but the jury were unable to agree upon the punishment.

On May 1, 1937, the court overruled a motion for a new trial and sentenced defendant to imprisonment in the penitentiary at McAlester for a term of two years. To reverse the judgment he appeals.

The assignments of error will be considered in the order presented in appellant's brief.

The first question presented is the sufficiency of the evidence to sustain the verdict and judgment of conviction.

The undisputed facts are substantially as follows:

On the date alleged, the prosecutrix, 15 years of age, lived with her parents, about half a mile from the Oak Grove schoolhouse, about seven miles southeast from Ft. Gibson, and four or five miles from the town of Braggs.

On this date, she left her home and walked to Ft. Gibson, and her parents went to a meeting at Braggs. About 4 o'clock in the afternoon of said day, she started home on foot. The defendant, Harvey Fannin, 22 years old, lived with his sister on a farm near Braggs. On that day he was driving from Ft. Gibson to his home in a one-seated Chevrolet coupe. Andy Cookson was riding in the car with him. About a mile out of Ft. Gibson, he passed the prosecutrix on the road, stopped and invited her to ride and she got in the car. When they passed the Oak Grove schoolhouse, it was raining, the defendant laughed and said: "I will bring you back, you will not have to walk in the rain." And they went on to Braggs.

There the defendant said he would take Andy home and come back and take her home. He came back and they started back towards her home, went east about a mile, turned north half a mile and stopped the car.

The prosecutrix testified as follows:

"Q. Then what happened, what did he say: A. He said he intended to do it to me. I said he was not going to, and he pulled up my dress, I kicked him, and I kicked the windshield out with the other foot. He said you are going to pay for that, and I kicked the window in the door out and he slapped me. I got him by the hair on his head and picked up a piece of glass on the seat and tried to cut him and cut myself. He kept swearing and twisting my arm, and he got the glass and threw it out. I got under the steering wheel, and he pulled me out by the neck, and I slapped him. A wagon came by, it was Mr. Martin, and some other folks in the wagon. I asked him if I could ride, and they said that they were going part of the way, and when I got where I could see the road up to my house, I told Mr. Martin I wanted to get off, it was a mile and a half from there to my house, and it was a little after dark when I got home, I told my mother what happened. My ear was scratched and the right side of my face was scratched."

Henry Martin testified that he had been living at Braggs 25 or 30 years; that he was driving from Ft. Gibson to his home in Braggs in a farm wagon; a mile east and a half a mile north of Braggs he saw two persons in a car, parked by the roadside and it looked like they were fighting; that just before he came to the car a man got out on the left-hand side, then the girl fell out of the car, and she raised up and went to fighting, the man backed up a few steps and she slapped him, then she ran back, picked up something and asked if she could ride, and got in the wagon; that he let the girl out on the road when she asked; that the women folks were sitting in the back part of the wagon.

Paul Martin testified that he saw the car on the roadside and before they came up to the car some one fell out, by that time they were close up to the car, when his father stopped the wagon the girl got in, and as they started off he heard the girl say to the defendant, "I will get even with you."

Mrs. May Martin testified that when they came to the car, it looked like the man and the girl were fighting, then the girl fell out of the car and ran after the man, then she asked to ride, and got in the back of the wagon. That after riding about a mile and a half with them, she left the wagon, that the girl seemed to be angry and there was blood on her right hand, and there were cuts on the calves of her legs.

On cross-examination she was asked:

"Q. When she got in the wagon, did she tell you that when they passed the schoolhouse she wanted to get out and Harvey would not let her out? A. Yes, sir. Q. Didn't she tell you that the other man got out and she started to get out and Harvey would not let her? A. She just said she wanted to get out at Braggs and he would not let her get out."

The testimony of Mr. and Mrs. Roland, who were riding in the Martin wagon, was substantially the same as that of the other occupants.

Clara Ragsdale, the mother of the prosecutrix, testified that her daughter was 15 years old on February 9, 1936; that she sent her to Ft. Gibson that day, and with her husband went to Braggs; they were all on foot; that with her husband she returned home about 4 o'clock; that when Lenora came home, she was crying, her neck was scratched and her right hand was cut, and she told her what had happened, and that the man was Harvey Fannin.

When the state rested the defendant moved the court to advise the jury to return a verdict of not guilty, for

the reason that the evidence was insufficient to warrant a conviction for assault with intent to rape. Which was overruled. Exception allowed.

As a witness in his own behalf the defendant testified that his age was 22 years; lived with his sister on a farm near Braggs, and that on the date alleged, he was driving from Ft. Gibson to his home, in a one-seated car, Chevrolet coupe; that Andy Cookson was riding in the car with him; that about a mile out of Ft. Gibson, he picked up this young lady; that there were some spicy stories told along the way, and she took it all right, and seemed to be enjoying it; that they passed the Oak Grove schoolhouse, and he asked her to go on to Braggs with him, and she said "All right", and he said, "What about you and me going on into town and taking him, and then we will go out for a little time", and she said she had to be home by 5 o'clock, and he told her he would get her home; she said that would be all right. That at Braggs he left the car and went into a meat market and paid a bill, came out and got back into the car, and they drove east of town a mile, then half a mile north, and stopped. He told her this was the place; she said, "What for?" and he told her, and she said, "Nothing doing"; that they sat there a while and he was trying to talk her into it; that when he started to sit close to her she began fighting and kicked the glass out of the car door and the windshield; they kept on fighting and she picked up a piece of glass and cut him in the neck, and exhibited the scar; that he stopped her and took her by the hands and pulled her out of the car; that he did not have any intention of forcing her to submit. That his mother died when he was two years old, that he had never been convicted of a crime, and had never been arrested except on this charge.

It is contended that the evidence is not sufficient to show an assault with a felonious intent to commit rape.

The prosecution is based on section 1869, Penal Code, St. 1931, 21 Okla. St. Ann. § 681, which reads:

"Every person who is guilty of an assault with intent to commit any felony, except an assault with intent to kill, the punishment for which assault is not otherwise prescribed in this code, is punishable by imprisonment in the state penitentiary not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding $500 or by both such fine and imprisonment."

Rape as defined by our statutes, Penal Code, sec. 2515, St. 1931, 21 Okla. St. Ann. § 1111 "is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances," reciting eight conditions under which an act of intercourse will constitute rape, if accomplished.

The section defining the degrees of rape reads as follows:

"Rape committed by a male over 18 years of age upon a female under the age of 14 years, or incapable through lunacy or unsoundness of mind of giving legal consent; or accomplished with any female by means of force overcoming her resistance, or by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, preventing such resistance, is rape in the first degree. In all other cases rape is of the second degree." Section 2518, 21 Okla. St. Ann. § 1114.

The facts in this case restrict us to a consideration of the question whether the defendant assaulted the prosecutrix with intent to commit the crime of rape as defined by the fourth subdivision of said section (1111), namely: "Where she resists, but her resistance is overcome by force and violence," or whether the defendant assaulted the prosecutrix with intent to commit the crime of rape as defined by the first subdivision of said section, namely, "An act of sexual intercourse accomplished with

a female, not the wife of the perpetrator, * * * where the female is under the age of 16 years."

The information in this case, to which no objection was made, charges an assault with the unlawful and felonious intent "to have sexual intercourse with the said Lenora Ragsdale, forcibly and against her will" as defined by the fourth subdivision of the section quoted above, namely, "where she resists but her resistance is overcome by force and violence."

Under this subdivision the information is defective in that it does not charge that the defendant committed the assault with a felonious intent to have sexual intercourse with the assaulted female by force and violence "sufficient to overcome any resistance she might make."

It is undisputed that at the time in question the prosecutrix was under the age of 16 years, which if accomplished would be rape in the second degree. Whether such act is accomplished by means of force and violence sufficient to overcome any resistance she might make, or with her consent, the law conclusively presumes that the female being within the age fixed by statute is incapable of consenting and therefore the act is by force and violence.

An "assault" is any willful and unlawful attempt or offer, with force or violence, to do a corporal hurt to another, Penal Code, § 1865, St. 1931, 21 Okla. St. Ann. § 641; and a "battery" is any willful and unlawful use of force and violence upon the person of another, Penal Code, § 1866, 21 Okla. St. Ann. § 642.

An assault with intent to rape includes every element of the crime of rape by force overcoming resistance except penetration. The felonious intent is the essence of the offense. It is elementary, when a specific intent is required to make an act an offense, that the doing of the act does not raise a presumption that it was done with the

specific intent. Intent, which is essential to support conviction of assault with intent to rape, cannot be presumed, but must be shown to exist by competent evidence and beyond a reasonable doubt. Something more than a mere intention and solicitation is necessary. Cape v. State, 61 Okla. Cr. 173, 66 P. 2d 959.

In the case of Lee v. State, 7 Okla. Cr. 141, 122 P. 1111, this court held:

"In a prosecution for an assault upon a female child under the statutory age of consent, with intent to commit a rape, it is not necessary to allege or prove that the acts were done against her will. Whether she consented, submitted, or resisted is wholly immaterial."

The prosecutrix, being under the age of consent, was conclusively incapable of legally consenting to an assault with intent to have carnal knowledge of her. Every attempt to commit a felony against the person involves an assault; and if the acts of the defendant, done in furtherance of a purpose to have carnal knowledge of the prosecutrix, constituted an assault to commit rape, if done without her consent, then no act of hers could waive such assault. Bouie v. State, 9 Okla. Cr. 345, 131 P. 953.

To constitute the offense of "assault with intent to rape" as defined by the first subdivision of said section, the intent which is essential to support a conviction cannot be presumed, but must be shown to exist by competent evidence beyond a reasonable doubt.

The defendant as a witness in his own behalf admitted that he intended to accomplish an act of sexual intercourse with the prosecutrix, if she did not resist.

We are unable to say that the testimony of the prosecutrix was in any way impeached, or that it appears unreasonable and unreliable. It goes without saying that the credibility of the witnesses was for the jury.

It is also urged that there was no proof of venue. The record shows that both the prosecutrix and the defendant testified that the assault was committed one mile east and half a mile north of the town of Braggs.

In the case of Dodson v. State, 30 Okla. Cr. 135, 235 P. 268, 269, we said:

"Courts of the state take judicial notice of the boundaries of the state and the counties of the state, and also the geographical location of cities and towns within the state. Goben v. State, 20 Okla. Cr. 220, 201 P. 812."

In Evinger v. State, 57 Okla. Cr. 63, 45 P. 2d 552, 553, we said:

"The proper practice is for the state to prove venue by direct and positive evidence, yet the essential test is whether or not the venue has in some way been proven. Venue may be established by circumstantial evidence." And see McColloch v. State, 45 Okla. Cr. 442, 283 P. 1026.

The record shows that exceptions to all but three of the instructions given by the court were taken and exceptions taken to the refusal to give certain instructions. The instructions refused in effect require that in order to convict, the jury should be satisfied that the defendant assaulted prosecutrix with a felonious intent to have sexual intercourse with her by force or violence, sufficient to overcome any resistance she might make. What has been said and the authorities which have been cited sufficiently show that there is no basis for the exceptions taken.

This court is not permitted to reverse a rightful judgment of conviction on the ground of the misdirection of the jury, unless, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or

statutory right. Procedure Criminal, sec. 3206, St. 1931, 22 Okla. St. Ann. § 1068.

The record shows that two verdicts were returned by the jury in this case. The first verdict, omitting title, reads:

"We, the jury in the above entitled action duly impaneled and sworn, upon our oaths, find defendant guilty as charged in the information and assess his punishment at a fine of $—— and costs.

"Cannot agree on punishment and leave punishment to the court with recommendation of leniency.

"Sam Bettis, Foreman."

After the court had received and examined this verdict the following occurred:

"The Court: From this form of verdict I see that you have written it out in your own handwriting and cannot agree to the punishment and leave it to the court. I am going to rewrite the verdict. I thought that I had included it with the others. As I understand it, the jury finds the defendant guilty as charged in the information and leaves the punishment to be fixed by the court. Is that right gentlemen?

"Mr. Sam Bettis, Foreman: Yes, that is right. (All other jurymen nod head in affirmative.)

"The Court: Gentlemen, I have prepared another form of verdict for you to sign, will you please retire to your jury room and return when you have signed the verdict."

The jury retired from the courtroom: Shortly thereafter the jury returned into court the following verdict, omitting title:

"We, the jury in the above action, duly impaneled and sworn upon our oaths, find the defendant guilty as charged in the information but cannot agree on his pun-

ishment and leave same to be fixed by the court with recommendation of leniency.

"Sam Bettis, Foreman."

Counsel for the defendant in the brief says:

"In connection with the proceedings had here, we call the court's attention to the fact that the jury prepared a verdict of its own, not using any form furnished by the court. We also call attention to the fact that they used a form where a fine only was to be imposed and in addition to this fact recommended leniency. In using a form in which a fine only could be imposed, it seems clear to us that the jury had no thought of punishing the defendant other than to assess a fine against him and that they simply could not agree as to the amount of the fine."

Our Code of Criminal Procedure, sec. 3097, St. 1931, 22 Okla. St. Ann. § 916, provides that the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or an attempt to commit the offense.

The information to which no objection was interposed is sufficient to charge an assault to rape as defined by the first subdivision of section 2515 supra, as an included offense.

The language of the information is based on rape as defined by the fourth subdivision of said section, and also charges the included offense of assault and battery, and we are inclined to think that the issue of assault and battery should have been submitted to the jury.

Strict technical rules of construction should never be applied to the verdict of a jury. Their verdict should receive a common-sense construction, and if it is possible to arrive at the intent and purpose of the jury, the verdict should be upheld. Love v. State, 12 Okla. Cr. 1, 150 P. 913. In the instant case the jury evidently agreed that the punishment to be imposed should be a fine, but

they could not agree upon fixing the amount of the fine.

It is both the spirit and intention of our laws that punishment for crime shall be imposed for the protection of society and the reformation of the criminal.

Upon a careful consideration of the entire record it is the opinion of the court that substantial justice does not warrant a reversal of the judgment, but does require a modification of the judgment and sentence to in a measure conform to the first verdict returned by the jury. For this reason the judgment and sentence of the trial court will be modified. It is therefore adjudged that the judgment and sentence herein be modified; that the defendant, Harvey Fannin, pay a fine of $300 and the costs, and in default of the payment of the fine and costs, the same to be satisfied according to law.

The judgment and sentence of the district court of Muskogee county, as thus modified, will be affirmed.

BAREFOOT and DAVENPORT, JJ., concur.