## JOE HAMRICK v. STATE.

No. A-10739.    Sept. 17, 1947.

(184 P. 2d 807.)

I. L. Cook, of Atoka, and Rowe Cook, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and W. H. Parker, County Atty., Atoka County, of Atoka, for defendant in error.

BAREFOOT, P. J.  Defendant, Joe Hamrick, was charged in the district court of Atoka county with the crime of assault with intent to rape; was tried, convicted and sentenced to serve a term of four years in the State Penitentiary, and has appealed.

For a reversal of this case, it is contended:

"I.  The information purporting to charge the defendant with the crime of assault with intent to rape was insufficient as a matter of law to withstand timely demurrer or to permit the introduction of evidence after it appeared that the prosecutrix was 31 years of age.

"II. The testimony of the prosecutrix is uncorroborated, inherently improbable, and unworthy of belief, and is sufficient as a matter of law to support the verdict, judgment and sentence.

"III. The sentence is excessive under any view of the law and the evidence."

The crime of rape is defined by Tit. 21, O. S. 1941 § 1111, as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: * * *

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power by execution. * * *"

An assault with intent to commit rape is a crime by reason of Tit. 21, O. S. 1941 § 681, which is as follows:

"Every person who is guilty of an assault with intent to commit any felony, except as assault with intent to kill, the punishment for which assault is not otherwise prescribed in this code, is punishable by imprisonment in the State penitentiary not exceeding five years, or in the county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The charging part of the information in this case was as follows:

"That is to say, the defendant did in said county and state, at the date above named, wilfully, unlawfully, wrongfully, knowingly and feloniously, make an assault in and upon one Lorene Rollo, a female person, not the wife of him the said Joe Hamrick, with his hands and fists, and with a .22 target gun, and did then and there

beat, bruise and wound her, the said Lorene Rollo, with his hands and fists, and threaten to use said .22 target gun on her, all with the wilfull, wrongful, unlawful and felonious intent, then and there, on the part of him the said Joe Hamrick, then and there to forcibly and against her will ravish, rape and carnally know her, the said Lorene Rollo, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

To the above information a demurrer was filed, as follows:

"Comes now the defendant above named, and demurs to the information filed herein, and for grounds of objection, states:

"1.   Said information fails to allege sufficient facts and is so indefinite and uncertain that a conviction had thereon could not be plead in bar of trial in a subsequent prosecution for the same offense.

"2.   Said information fails to allege facts sufficient to charge the crime of assault with intent to rape by use of force and violence.

"Wherefore, defendant prays that he be discharged from bail and further attendance upon the court."

This demurrer was overruled on October 30, 1945, and defendant excepted.

The first assignment of error is that the court erred in overruling the demurrer to the information.

The rule in this state with reference to the sufficiency of an indictment or information has been defined by Tit. 22 O. S. 1941 § 401:

"The indictment or information must contain:

"1.   The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Tit. 22 O. S. 1941 § 408 provides:

"Words used in a statute to define a public offense, need not be strictly pursued in the indictment or information; but other words conveying the same meaning may be used."

And section 409 of the same Title:

"The indictment or information is sufficient if it can be understood therefrom:

"1. That it is entitled in a court having authority to receive it, though the name of the court be not stated.

"2. That it was found by a grand jury or presented by the county attorney of the county in which the court was held.

"3. That the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his true name is unknown.

"4. That the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein.

"5. That the offense was committed at some time prior to the time of filing the indictment or information.

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense, is stated with such a degree of certainty, as to en-

able the court to pronounce judgment upon a conviction according to the right of the case."

And Tit. 22 O. S. 1941 § 410:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

It is contended by defendant that the information in the instant case is insufficient by reason of the fact that it does not specifically state "by force and violence sufficient to overcome any resistance she might make."

An examination of the authorities of the Territorial Court and of this court reveals that there is some conflict in the decisions, and that some of the earlier cases have been overruled by the later cases. It is unnecessary to unduly lengthen this opinion by a comparison of these cases. We cite them and reference will only be made as is deemed necessary: Young v. Territory, 8 Okla. 525, 58 P. 724; Sowers v. Territory, 6 Okla. 436, 50 P. 257; Rector v. Territory, 9 Okla. 530, 60 P. 275; Lee v. State, 7 Okla. Cr. 141, 122 P. 1111; Fannin v. State, 65 Okla. Cr. 444, 88 P. 2d 671. Also cited by the defendant is Cape v. State, 61 Okla. Cr. 173, 66 P. 2d 959.

In the brief of the state, reference is made to the above cases, and attention is called to the fact that the Young and Rector cases have been modified and overruled by the case of Maples v. State, 30 Okla. Cr. 151, 235 P. 264, 265, in which it is stated:

"Considering first the objection to the information, the charging part is as follows:

" 'That the said J. K. Maples did then and there, by means of force and threats and violence, unlawfully, in-

tentionally, wrongfully, and feloniously make an assault upon a certain female person, to wit, Cleo Sampier, with the unlawful and felonious intent of the said J. K. Maples then and there to have and accomplish an act of unlawful sexual intercourse with her, the said Cleo Sampier, to rape, ravish, and carnally know her, the said Cleo Sampier, by attempting to then and there overcome all resistance of the said Cleo Sampier; she the said Cleo Sampier not then and there the wife of said J. K. Maples.'

"The plaintiff in error contends that this information is defective for two reasons: First, that it does not charge that the plaintiff in error committed the assault with the felonious intent to have sexual intercourse with the assaulted female by force or violence sufficient to overcome any resistance she might make; second, that the information does not allege the acts done toward the commission of the crime charged.

"The information here is not a model by any means, but if it contains a statement of the acts constituting the offense in ordinary and concise language, in such a manner as to enable a person of ordinary understanding to know what is intended, it is sufficient. Section 2555, Comp. St. 1921 [Tit. 22 O. S. 1941 § 401]; Star v. State, 9 Okla. Cr. 210, 131 P. 542. It appears to us that, construing this information under the ordinary rules of construction, any person of common understanding would know that the plaintiff in error was being charged with an assault upon the person of Cleo Sampier with the felonious intent to commit a rape upon her person. It would carry no other meaning, and while it is not arranged and stated as simply and clearly as it might be, yet it does state the charge with such particularity as to clearly enable the accused to identify the offense with which he is charged, and sufficiently to enable him to defend himself in case he should again be informed against for the same offense, and when this is true the information is sufficient. Arnold v. State, 48 Okla. Cr. 452, 132 P. 1123; Smythe v. State, 2 Okla. Cr. 286, 101 P. 611, 139 Am. St. Rep. 918; Price v. State, 9 Okla. Cr. 359, 131 P. 1102;

Deen v. State, 7 Okla. Cr. 150, 122 P. 941; Bowes v. State, 8 Okla. Cr. 277, 127 P. 883.

"This court, in the case of Williams v. State, 10 Okla. Cr. 336, 136 P. 599, had under consideration an information, the charging part of which is as follows:

" 'One James Williams, then and there being, did then and there intentionally, unlawfully, willfully, and feloniously make an assault upon one Mrs. W. W. Hyden, a female person over the age of 18 years, and of previous chaste and virtuous character, with an intent her, the said Mrs. W. W. Hyden, unlawfully and feloniously to rape, ravish and carnally know, and he, the said James Williams, did then and there attempt to unlawfully and feloniously rape, ravish, and carnally know the said Mrs. W. W. Hyden; the said Mrs. W. W. Hyden not being the wife of the said James Williams,'

"—and held that this was insufficient to charge an attempt to commit a rape, as not setting out the acts done, but held that it was sufficient to charge the crime of assault with intent to rape, under section 1758, Compiled St. 1921 [21 O. S. 1941 § 681], which is the section under which the information in this case is filed and all the proceedings had, and on the authority of that case, as well as the general rule announced, the information is sufficient. In the case of Williams v. State, supra, this court further modified the rule announced in the case of Young v. Territory, 8 Okla. 525, 58 P. 724, and Rector v.Territory, 9 Okla. 530, 60 P. 275. See Castleberry v. State, 10 Okla. Cr. 504, 139 P. 132."

In the case of Williams v. State, supra, the information was very similar to the one in the instant case, and there was no allegation of "by force or violence sufficient to overcome any resistance she might make." The court in this case held that the information was sufficient to charge the crime of assault with intent to rape, the same

crime of which defendant was convicted. The court said [10 Okla. Cr. 336, 136 P. 600]:

"The information is sufficient to charge the crime of assault with intent to commit rape, and the evidence is sufficient to sustain a conviction of either offense."

See, also, Lee v. State, 7 Okla. Cr. 141, 122 P. 1111.

With reference to the sufficiency of an indictment or information as against a general demurrer, and a consideration of the statute above quoted, this court has adopted the general rule that: An information is sufficient which informs an accused of the offense with which he is charged with such particularity as to enable him to prepare for his trial, and so defines and identifies the offense that, if convicted or acquitted, he will be able to defend himself against any subsequent prosecution for the same offense. See Simpson v. State, 67 Okla. Cr. 152, 93 P. 2d 541, and cases cited therein.

In many of the cases reference is made to the evidence and to its sufficiency to sustain the allegations of the information. We are of the opinion that the information filed in this case is sufficient as against a general demurrer, and that the evidence is sufficient to sustain the judgment and sentence assessed in this case. We find that the evidence of the prosecutrix is corroborated to the extent required by the law, and that her testimony is not "inherently improbable, and unworthy of belief."

The facts, as they appear from the record, were that defendant was engaged in farming in Atoka county on June 29, 1945. The prosecutrix, Mrs. Lorene Rollo, who was 31 years of age, and the mother of five children, lived with her husband about one mile from defendant's farm. On June 28, 1945, defendant asked prosecutrix to come

to his farm on June 29, 1945, and hoe for him. Her husband was away from home on that date. She went to defendant's home, and her testimony as to what occurred was as follows:

"Q. What did you do when you got there? A. When I went to the gate I said 'good morning' and he was setting on the porch in a chair and he had a pair of pants and a needle and thread and he said 'come in' and I went in on the porch and I didn't see his folks and I thought his wife was milking or the children was asleep, so I set down in the swing on the porch on the north end of the porch. Q. Did anything unusual occur? A. Yes, sir. He went in the house and when he come back out the door he come toward me. Q. How long after you got there? A. Just a few short minutes. Q. All right. Start there and go ahead and state what occurred. A. Well, when he got to wherever I was he grabbed me and tried to kiss me, and I said 'Joe, what do you mean' and I hollered and I must have said 'Dorothy' and he said, 'She is in the field' and against my will he took me in the house—he hit me first and the door is lower there and he hit me and carried me to the bedroom against my will and throwed me on the bed with his full weight on me and hugged and kissed me and I was trying to get loose and he was trying to undo my clothes and I finally got loose and got to the floor and he got me down and tried to pull my overalls off and I grabbed my straps and he twisted this right arm and there was a door in the east and a door in the west, but the dresser was setting between the west and the door that goes into the side room to the north and he throwed me first in that door between the door and the dresser and my head was to the north and feet to the south and he took my overalls off of me and I was hollering and shoving and trying to get loose and he hit me on this jaw. Q. Did you have a doctor examine you shortly afterwards? A. Yes, sir. Q. How soon? A. On July 3rd, on Tuesday. Q. Who was that Doctor? A. Doctor Briggs. Joe choked me and also hit me on this side, and every time I tried to get loose he said, "God damn it, I will hurt

you—God damn it stop or I will hurt you.' Q. He pulled you on the floor? A. Yes, sir. Q. He pulled your overalls off? A. Yes, sir. I got loose again and he throwed me down again and my head was to the west. Q. Did you have an opportunity from the time he had dragged you in there to get out of there? A. No, sir. Q. Did he have hold of you all the time? A. Yes, sir. Q. While on top of you, I will ask you if there was an emission or discharge from him? A. Not at that time there wasn't. When he stripped my skirt off he tore my skirt and his full weight was on me and he pressed me to the floor and I had my legs crossed and I was trying to raise up and he tried to part my legs and at last he took my left—or he took his left arm and pressed me to the floor and then he did. Q. Had a discharge? A. Yes, sir, with his right hand, he sure did. Q. Did you see any gun there at that time? A. Yes, sir, after that was over— By Mr. Rowe Cook (for defendant) If the court please— By the Court: Don't lead. A. He told me to get up and get my clothes on and he said, 'that God damn bull' and walked around over the floor and I put my clothes on and my shoes was off and I put them on and I pulled my clothes up around me. Q. What else did he do or say? A. He said something about being crazy, and I told him that he would be crazier than that when Garrison got done with him and he said I wouldn't tell Garrison and reached up and got a gun—the .22 and said, 'if you tell Garrison I will kill you and get Garrison first.' Q. Garrison is your husband? A. Yes, sir. Q. I believe you turned over your clothes to the sheriff? A. Yes, sir. Q. I hand you a pair of overalls and ask you to state whether those are the overalls you had on at the time? A. Yes, sir. They have been washed, but these are the ones I had on. Q. This shirt? This is the shirt? A. Yes, sir. By Mr. Cook: He can offer them in evidence. Q. Did you have that on at that time? A. Yes, sir. By Mr. Correll: I have a shirt marked Exhibit A, and a slip "B", and a pair of overalls "3". Q. With reference to tears, was this slip in this condition that it is now in prior to the time he struggled with you? A. Except being washed. Q. Were there any

tears in there prior to the time you had this struggle with him? A. No, sir. Only this right here. Q. Were any of these tears accomplished in the struggle? A. Yes, sir. Q. Describe them to the jury? A. He tore this slip plumb off of me on the front. Q. He pulled your overalls off? A. Yes, sir. Mr. I. L. Cook: I suggest he offer them in evidence. (The garments are offered in evidence without objection from defendant.) By the Court: Are you going to offer them in evidence? By Mr. Correll: Yes, sir, I offer in evidence. By Mr. I. L. Cook: No objection. By the Court: Let them be admitted. Q. Is the shirt in the same condition it was? A. Yes, sir, except being washed. Q. Where did he tear the shirt? A. There is a place tore there. Q. Did he do that? A. Yes, sir. Q. You say the slip was put in that condition and the tears on that shape? A. Yes, sir. Q. After you got dressed did you get out of there as fast as you could? A. Yes, sir. He had the gun in his hand and he told me to go out where Dorothy was and not tell her. Q. And she is his wife? A. Yes, sir. Q. Where did you go? A. I went to the field and he followed me to the gate. He had a high wire fence on the north side of the house and he walked to the gate and there was a latch on the gate and he raised the latch on the gate with the gun in his hand—in his right hand and he told me to go where Dorothy was and not to tell her anything. Q. Did he say what he would do if you told her anything? A. He said he would kill me and said he would get Garrison."

It is revealed by the evidence that prosecutrix told the wife of defendant what had happened to her when they returned to the house at noon, after working in the field; that on the following day, Saturday, July 3, she told Mrs. Shoemaker, a friend who testified at the trial; and on Sunday told her sister, who also testified.

Dr. T. H. Briggs testified that he as called to examine the prosecutrix on July 3, 1945. His testimony was:

"Q. Was anything unusual about her condition? A. Except she had some little bruises on her chest and one on her neck, and one on her arm—what you would call black spots. Q. Could the marks that you saw on the side of the neck have—what did they probably come from, according to your knowledge—could you tell what' they were made with? A. No, sir. Q. Marks on the side of the neck and one on the chest? A. Blue places—bruises —contusions or light bruises. Q. How many bruises on her? A. Three. Q. Did she purport to tell you how she got those bruises? A. Oh, yes, she told me a lot of stuff."

This was about all of the evidence offered by the state, and the only evidence offered by the defendant was the wife of defendant, who testified as to the prosecutrix coming to their place to work on the morning of June 28, 1945. That she left her husband at home mending some clothes when she went to the field about 8 o'clock in the morning. That soon thereafter prosecutrix appeared in the field. That she made no complaint of mistreatment by defendant at that time. That the defendant came to the field and they all worked together until she left to go and get dinner. That the defendant and prosecutrix came to the house together and nothing was said, and there was nothing to indicate that anything had happened until she was washing the dishes, when prosecutrix told her that her husband had attacked her when she came to the house that morning. That she did not see any scratches or bruises on prosecutrix, and that she came back to work for them on July 5, when the defendant was there.

This court has held that corroboration may be had by testimony offered by the defendant. Brewer v. State, 63 Okla. Cr. 389, 75 P. 2d 901; Perry v. State, 74 Okla. Cr. 234, 125 P. 2d 219.

The wife of defendant testified that prosecutrix told her of the attack at noon after they had returned from the

field. The clothes of prosecutrix were offered in evidence as a circumstance which tended to corroborate her testimony. Other corroborating evidence has been stated.

The information was filed in this case on September 14, 1945.

The court, in his charge to the jury, submitted the question of assault and battery.

The jury returned a verdict of guilty of assault with attempt to rape and left the punishment to the court. The defendant was given a sentence of four years in the State Penitentiary. The maximum punishment provided by the statute is five years.

We have often held that one may be convicted of rape upon the uncorroborated evidence of the prosecutrix, but have also held that where her testimony is contradictory, uncertain, improbable, or she has been impeached, her testimony should be corroborated. Weston v. State, 77 Okla. Cr. 51, 138 P. 2d 553; Ferguson v. State, 78 Okla. Cr. 126, 145 P. 2d 216; Maxwell v. State, 78 Okla. Cr. 328, 148 P. 2d 214; DeWitt v. State, 79 Okla. Cr. 136, 152 P. 2d 284; Lancaster v. State, 79 Okla. Cr. 395, 155 P. 2d 548.

A careful examination of the evidence in this case is not such that would cause one to come to the conclusion that it was contradictory, uncertain or improbable; and she was not impeached. She told a very reasonable story and she was not confused in any way on cross-examination. The jury heard her evidence, and also the evidence of the defendant's wife. We do not think we would be justified in coming to the conclusion that the evidence in this case was insufficient to sustain the judgment.

64

We are also of the opinion that the judgment and sentence is not excessive, and that we would not be justified in modifying the same.

For the reasons above stated, the judgment and sentence of the district court of Atoka county is affirmed.

JONES and BRETT, JJ., concur.