Lonnie GRAVES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–174.

Court of Criminal Appeals of Oklahoma.

April 26, 1977.

Carl E. LeForce, Jerry L. McCombs, Idabel, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

**PER CURIAM:**

Appellant, Lonnie Graves, hereinafter referred to as defendant, was charged by information in the McCurtain County District Court with the offense of Murder in the First Degree, 21 O.S.Supp.1973, § 701.1. The defendant was tried before a jury and convicted. In accordance with the applicable statute, a sentence of death was imposed. This Court issued defendant a stay of execution and this appeal followed.

On January 16, 1975, an investigation was launched into the death of Daniel Ray, whose body was discovered near his home southwest of the City of Idabel. Ray was an old man who had been killed in a horribly brutal manner, having been stabbed repeatedly and stomped to death. Investigators at the scene recovered a pocket knife blade and handle, as well as a radiator cap near the scene. A forensic chemist for O.S. B.I. testified that blood taken from the deceased was Group "O" and that human blood Group "O" was on the knife blade. The chemist further testified that she found human blood on the right boot of a pair of combat boots which was taken from the defendant. Dr. Merlyn Bellamy testified that he performed an autopsy on the deceased and in his opinion the cause of death was stabbing.

Ms. Alma Faye Townsend testified that she was acquainted with the defendant. She testified that on January 13, 1975, Leroy Daniels, Frank Nelson, and the defendant, were at her apartment. She also testified that Daniels had a gun, and the defendant had a knife. She stated that the trio had discussed "pulling a job on an old man." (Tr. 528). She further testified that the three left for awhile and later returned talking about having stabbed someone.

Travis Fortune, a former cellmate of the defendant, testified that while incarcerated with the defendant and Daniels, the defendant told him that he (defendant) could not let the man live to identify him (defendant). The witness also related that the defendant stated that there were three parts to the knife of which the court only had two.

Sam Sparks, O.S.B.I. Agent, testified that he interviewed the defendant on January 21, 1975. Sparks testified that he advised the defendant of his rights and that the defendant signed a waiver of his rights. The signed waiver was admitted into evidence. At this point defense counsel voir dired Sparks to determine if Sparks had ever used threats of the electric chair to coerce the defendant into giving a statement. Sparks denied having done so and defendant's objection to the testimony was overruled. Sparks then testified that during the interview the defendant related that he, Daniels, and Nelson had gone to the deceased's home in Daniels' truck. The defendant then related to Sparks that after asking the deceased for water for the truck; that they knocked the deceased down, beat, and kicked him. The defendant then related to the witness that the trio had received about $40.00 from the deceased. The State then rested.

The first witness for the defense was Nelson. He testified that, in his opinion, the defendant was intoxicated at the time of the alleged murder. On cross-examination, Nelson was questioned concerning prior inconsistent statements he had made under oath. On Re-direct-examination, Nelson recalled making the prior inconsistent statements, but asserted that the prior ones were not correct. He further testified that Daniels had stabbed the deceased and that the inconsistencies were due to threats of the electric chair made by Sparks.

An employee of an Idabel, Oklahoma Auto Store, next testified that in his opinion the radiator cap found at the scene would not fit Daniels' truck.

Dr. Eugene Walker, a clinical psychologist, testified that he interviewed the defendant. He stated that the defendant's I.Q. was approximately 67 and that the defendant was mentally retarded. In response to a hypothetical question, Dr. Walker stated that a person with the defendant's I.Q., after having drunk an amount of alcohol, probably could not tell right from wrong.

Dr. LeRoy Gathman, a psychiatrist from the University of Oklahoma Health Science Center, testified that he examined the defendant and that in his opinion the defendant would have been unable to form a premeditated intent, after having drunk some alcohol.

On rebuttal, the State called Dr. R. D. Garcia, Chief Forensic Psychiatrist at Eastern State Hospital at Vinita, Oklahoma. Dr. Garcia testified that he examined the defendant and was of the opinion that the defendant knew right from wrong. Next, the court reporter testified that he prepared a partial transcript of Nelson's prior testimony, showing alleged inconsistencies with Nelson's testimony concerning the instant case. The partial transcript was admitted into evidence. Sam Sparks was recalled and testified that he did not threaten Nelson with the electric chair although the

death penalty had come up in one of their conversations.

On sur-rebuttal, the defendant recalled Dr. Gathman. His testimony tended to contravene the testimony of Dr. Garcia.

The case was then submitted to the jury who returned with a guilty verdict, and this appeal followed.

■ The defendant's first assignment of error is that the trial court erred in admitting the defendant's confession without first conducting an in camera hearing on its admissibility. We note from the record that the defendant made no pre-trial motion to suppress the confession. The defendant's objection to agent Sparks' testimony was a general objection (irrelevant, incompetent and immaterial). Additionally, defendant chose to voir dire the witness within the hearing of the jury, perhaps for tactical reasons. This voir dire brought out the circumstances of the interview, the age, I.Q., and retardation of the defendant. Also mentioned was the defense counsel's theory that the confession was coerced by threats of the electric chair, which was denied by the witness, Sparks. This information is the same which would be required in camera on the admissibility of the confession. We are not persuaded that the trial court judge was under an affirmative duty to withdraw the jury sua sponte [1] and hold an in camera hearing on the admissibility of the confession following the voir dire of the witness. We are persuaded, that no prejudice resulted here and the defendant waived the in camera hearing by substantially holding the hearing in front of the jury and failing to request the same.

■ The defendant's second assignment of error is that the trial court erred in allowing the medical examiner to testify as to the condition of the body of the deceased. We note from a reading of the record, that all photographs of the deceased were withheld from the jury following defendant's motion to suppress same. We note that the

---

1. Defined as: of his or its own will or motion, voluntarily, without prompting or suggestion, *Black's Law Dictionary,* 4th Addn.Rev., 1968.

witness did not delve into the gory details of the condition of the body. We note that the doctor's description had probative value, in that the deceased's mandible was missing, a result of the alleged "stomping" by the defendant. Since the State did not dwell upon the gory aspects, nor did the testimony unduly emphasize this condition of deceased, we find no prejudice; therefore this assignment of error is without merit.

█ The defendant's third assignment of error, is that the trial court erred in admitting an 11 x 14 photograph of the alleged murder weapon. We note that the photo shows that, apparently, the blade and knife handle fit together. The photo was used to illustrate the testimony of an O.S.B.I. tool mark examiner. It appears to this Court that the purpose of the photo was to demonstrate that the blade and handle were one unit at one time. The photo appears to be an accurate representation of how the two fit together. It is not a photo of the entire weapon, but merely the break. See, *Hill v. State,* Okl.Cr., 550 P.2d 1356 (1976). We find no error in its admission.

█ The defendant's fourth assignment of error is that the trial court erred in admitting a pair of combat boots taken from the defendant. The evidence at trial showed that the mandible of the deceased had been crushed by a blunt force. The boots, with blood on them, having been taken from the defendant, were properly admitted tending to prove the State's theory of the crime on trial. Weighing the probative value of offered evidence as tending to support prosecution or defense theories is within the sound discretion of the trial court, and absent a clear showing of abuse, and resulting prejudice, the Court of Criminal Appeals will not interfere with the trial court's ruling. Accord, *Young v. Anderson,* 513 F.2d 969 (10 Cir. 1975).

█ The defendant's fifth assignment of error is that the trial court erred in certain rulings limiting the questioning of witness Travis Fortune. The defendant cites no authority and this question does not involve a fundamental right, therefore this Court will not search for authority to support the defendant's assertion of error. See, *Daniels v. State,* Okl.Cr., 554 P.2d 88 (1976).

█ The defendant's sixth assignment of error is that the trial court erred in rulings during the testimony of Nelson. The defendant's first proposition in support of this assignment of error is that the trial court erred in allowing the State to cross-examine Nelson concerning matters not covered on direct examination. The defendant alleges the court improperly refused the defendant's oral motion in limine concerning the scope of cross-examination. We note that no record was made of this motion or defendant's argument in support of it. It is the defendant's responsibility to preserve disputed matters for appeal. Absent a contrary showing, and without the record of the disputed ruling, this Court cannot meaningfully review the ruling. We recognize the trial court's discretion in these matters. The trial court may properly allow cross-examination outside the scope of direct examination, if such examination will reasonably tend to explain, contradict, or impeach the witness' testimony. See, *Chase v. State,* Okl.Cr., 541 P.2d 867 (1975). We are not persuaded that this proposition supports the defendant's sixth assignment of error.

█ Defendant's second proposition, in support of this assignment of error is that the trial court erred in admitting State's Exhibit No. 50. It appears from the record that the State laid a proper foundation in its cross-examination by directing the witness' attention to his prior testimony. A careful reading of the testimony of Frank Nelson reveals that Nelson testified on re-cross-examination that he had testified at the trial of co-defendant Daniels. The witness denied making the statement that the defendant had killed Ray. The witness was asked for clarification, "did you testify that LeRoy Daniels stabbed him [Danny Ray] at the the the trial of LeRoy Daniels?" The witness answered, "Yes. Yes, sir." (Tr. 622). On rebuttal, the State introduced a transcription of what the witness actually testi-

fied to at the trial of Daniels (Exhibit No. 50). State's Exhibit No. 50 reads as follows:

> "Q. O.K., let's back up just a minute. Who did you say stabbed Danny Ray?
>
> "A. Lonnie Graves.
>
> "Q. O.K., do you know what he did with the knife?
>
> "A. He threw it over into some bushes by the well.
>
> "Q. Did Lonnie Graves or LeRoy Daniels, either one, ever make any comment about the knife breaking?
>
> "A. Yes.
>
> "Q. Which one said something about it?
>
> "A. Lonnie Graves.
>
> "Q. What did he say?
>
> "A. He said, 'I broke the knife off in his throat.' "

It appears to this Court that Exhibit No. 50 was not admitted to assert the truth of the exhibit; rather the exhibit directly controverted the statement made by Nelson.

In the case of *Hoffman v. State*, Tex.Cr. App., 514 S.W.2d 248 (1974), the Texas Court of Criminal Appeals held that when a witness is confronted with prior inconsistent statements and admits them, the witness impeaches himself. Since the witness has impeached himself thus, there is no longer any need to admit the prior statement. However, in the instant case it can be seen from the above quoted testimony, that the witness in effect denied the statements he earlier made as evidenced by Exhibit No. 50. Having denied making the prior inconsistent statement, it was proper for the State to admit Exhibit No. 50 for the purpose of impeaching the witness. See, 81 Am.Jur.2d, Witnesses, § 608. See, also *Kennedy v. State*, Okl.Cr., 443 P.2d 127 (1968). Also, see, *Harmon v. Territory*, 15 Okl. 147, 79 P. 765 (1905). This proposition likewise fails to support defendant's sixth assignment of error, therefore we find the assignment of error to be without merit.

■ The defendant asserts as his seventh assignment of error that venue was not properly established at the trial, therefore the trial court erred in overruling de-

fendant's demurrer to the evidence. We note from the record that the first witness for the State testified as follows:

> "Q. Mr. DeBerry, where do you live?
>
> "A. Three and a half miles southwest of Idabel.
>
> "Q. Did you know Daniel E. Ray during his lifetime?
>
> "A. I did.
>
> "Q. Where did Mr. Ray live?
>
> "A. He lived a little over a quarter of a mile south of me and a mile west." (Tr. 476).

Although we find that this evidence constitutes sufficient facts from which the conclusion that the venue of the case was in McCurtain County could be drawn, we further note from the transcript at page 479, the State's second witness testified:

> "Q. Would you state your name to the Court, please?
>
> "A. Elmer Cook.
>
> "Q. Where do you live?
>
> "A. I live three and three-quarters of a mile southwest.
>
> "Q. Are you familiar with Dan DeBerry that just testified?
>
> "A. Yes, sir.
>
> "Q. And where does Mr. DeBerry live in relation to you?
>
> "A. Well, he lives about a quarter north of me."

We are not persuaded that the State failed to establish venue. Accord, *Fanin v. State*, 65 Okl.Cr. 444, 88 P.2d 671 (1939). This assignment of error is without merit.

■ The defendant's eighth assignment of error is that the court erred in failing to state into the record its reasons for giving the lesser included offense instruction on manslaughter in the first degree. Title 21, O.S.Supp.1973, § 701.3 reads in pertinent part:

> ". . . In a jury trial for murder in the first degree, nothing in this section shall preclude the trial judge from instructing the jury regarding lesser and included offenses and lesser degrees of homicide if the evidence warrants such instructions; *but in every instance where*

*an instruction authorizes the jury to consider lesser and included offenses and lesser degrees of homicide, the judge shall state into the record his reasons for giving the instruction based upon the evidence adduced at trial."* (Emphasis added).

We note from the record that the defendant's theory of defense was intoxication; we also note that there was evidence in the record concerning the defendant's mental retardation and possible intoxication at the time of the offense. This evidence, if believed by the jury would have supported a conviction for the lesser included offense. We note that court's instruction No. 22 states that the evidence introduced concerning intoxication, if believed by the jury, would support a lesser included offense. We believe that this statement is sufficient compliance with the statute. Further, we are of the opinion that had the trial court failed to give the manslaughter instruction, it would have constituted error. In this case, the evidence clearly supported the instruction and there is no error.

■ The defendant's ninth assignment of error is that the trial court erred in giving certain instructions. We note that counsel for the defendant did not submit requested instructions to the court. The defendant's objections to the instructions are not properly before this court; we note that counsel wrote some objections on the bottoms of pages of instructions, but made no record. This type of practice falls very short of preserving the issue for appeal and makes this Court's review very difficult.

■ The defendant specifically objected to Instruction No. 7 as it contained the definition of robbery by force and fear. Since robbery by force and fear is a lesser included offense of robbery with a dangerous weapon, and all the elements of the lesser must be proven in order to prove the greater, defendant's objections were properly overruled. Accord, *Smith v. State,* Okl.Cr., 378 P.2d 790 (1963). The inclusion of this instruction was at most surplusage and if error—harmless.

■ The defendant also complains that the instructions imply that even if the jury finds that the defendant was intoxicated to the extent that he could not form the premeditated intent, the requisite intent may be imputed to him through the aiding and abetting statute. This assertion is not correct. The court's instruction No. 22 reads in pertinent part:

". . . However, one of the elements of the crime of murder is an intent to effect the death of the person killed and if you find that the defendant at the time of the killing was so completely drunk as to be totally unable to form an intent to kill or if you have a reasonable doubt thereof, you should not find the defendant guilty of murder . . . ."

It is the opinion of this Court, that the instructions, taken as a whole, fairly and correctly state the law, and are not confusing or misleading. Further, the instructions fully address all the issues of the case; therefore this assignment of error is without merit. See *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974).

■ In his final assignment of error, defendant asserts the unconstitutionality of Oklahoma's death penalty statute, 21 O.S. Supp.1973, § 701.3. We agree. Defendant's sentence will be and hereby is MODIFIED from death to Life Imprisonment. See, *Riggs v. Branch,* Okl.Cr., 554 P.2d 823 (1976).

For all of the hereinbefore stated reasons, defendant's judgment and sentence will be MODIFIED from death to Life Imprisonment, and otherwise AFFIRMED.